SABINE & EAST TEXAS R'Y CO. V. B. J. JOHNSON.

(Case No. 2181.)

</div>

1. MEASURE OF DAMAGES FOR NEGLIGENTLY DELUGING LAND—The measure of damages for negligently deluging the land of another, without permanently taking it, is the value of the products destroyed, including fruit trees, and the injury done to the land, and not the difference between the value of the land before and after the overflow. (Following, R'y Co. *v.* Helsley, 62 Tex. 593; R'y Co. *v.* Harrington, 62 Tex. 597.)

2. SAME—The above rule entitles the owner to recover the value of his grass submerged, but not the price of new pastures or the expense of driving his cattle to them.

3. DAMAGE TO LANDS—LICENSE TO GRAZE CONFERS NO SUCH RIGHT IN LANDS AS WILL SUPPORT ACTION FOR DAMAGES DONE THEM—A mere license to graze one's cattle upon the lands of another, confers no such right in the lands as to entitle the owner of the cattle to recover damages for an injury done to the lands.

4. RAILROADS—OBSTRUCTING HIGHWAY—MEASURE OF DAMAGES—CASE STATED—A railway company, by the negligent construction of its road, deluged a highway, along which the children of J. were accustomed to go afoot to school, and thereby so obstructed it for two months as to compel his children either to remain at home during that time or to attend school by some other means than on foot. J. employed two horses, as long as the obstruction continued, in carrying his children to school, at a cost of $24.00 for horse-feed. *Held:*

(1) That J. was entitled to recover of the railway company, for obstructing the highway, an amount equal to his children's share of the school fund for two months, if that share was less than the value of the horse-feed; if greater, then to recover the value of the horse-feed.

5. RAILROADS—CATTLE DROWNED BY OVERFLOW—PROXIMATE CAUSE—If a railway company, by the negligent or improper construction of its road, deluges land, and the overflow, without the intervention of other agencies, directly and

proximately causes the drowning of cattle, their owner is entitled to recover their value, whether they were drowned on his land or not. (Citing Moak's Underhill on Torts, 287, 288.)

Appeal from Jefferson.   Tried below before the Hon. W. H. Ford.

This is a suit by Ben J. Johnson against the Sabine and East Texas Railway company, for damages for injury to land, fruit trees, growing crops, grass and live stock, from overflow caused by the negligent and improper construction of defendant's road.

The petition, which was lengthy, alleged, in substance, that the plaintiff was, and for more than ten years last past had been, the owner of a certain tract of land (a description of which is set forth in the petition), containing one hundred and twenty acres, and situated in Jefferson county, about two miles westwardly from Sabine pass; that Sabine lake and Sabine pass are both east of his land, and the shore line of the lake and the pass, from the mouth of Taylor's bayou, which flows into the lake, to the town of Sabine Pass, runs nearly north and south; that Taylor's bayou, the course of which is from west to east, and which discharges its waters into Sabine lake, about ten miles north of the town of Sabine Pass, is the principal means of drainage, after rains, of that portion of Jefferson county, and also portions of Liberty and Chambers counties; that the country lying south of Taylor's bayou, from its mouth westwardly, for a distance of fifteen miles, is generally low and flat, with a slight declension eastwardly and southeastwardly, towards Sabine lake and Sabine pass, sufficient for proper drainage; that frequently, after heavy rains, which are usual in that section of country, at different seasons of the year, Taylor's bayou overflows its banks on the south side thereof, and this water spreads over the whole surface of the country contiguous thereto, and, in connection with the surface water flowing from the southwest after a rain storm, runs eastwardly and southeastwardly, into Sabine lake and Sabine pass, over the banks thereof, which are low and flat from the mouth of the bayou to the town of Sabine Pass; that such had been the natural course of the drainage of that section of country from the earliest times, without material injury to grass, crops or lands, prior to the construction of the defendant's road.

The petition further alleges that, in the year 1882, the defendant constructed a railroad, which has ever since been operating, from the city of Beaumont to the town of Sabine Pass, in Jefferson county, a distance of thirty miles, between Taylor's bayou and the latter place, and, in the construction thereof, built an embankment of earth, about ten miles in length, for its road-bed, leaving but two openings therein for the purpose of drainage, each about one hundred feet wide; that

this embankment, from the point where the defendant's railroad crosses the bayou to the town of Sabine Pass, is west of Sabine lake and Sabine pass and near the shore line of the same; that by reason of the location and manner of construction of this embankment, and the great elevation or height thereof, it obstructs the flow of the water from Taylor's bayou, the surface water on the lands west of the road-bed and the drainage from the southwest, as before alleged, into Sabine lake and Sabine pass, and prevents such waters from following their natural course to and through their natural outlet, damming them to the depth of three feet and causing them to flow back over the lands west of the road-bed for a distance of ten miles and more, and to sub-merge and to stand upon the same, after every heavy rain, from one to ten weeks, whereas, before the construction of the defendant's road, the waters from the overflows and rains, when of same amount, would leave the lands clear in from one to five days; that plaintiff's land was and is subject to overflow from the high waters of Taylor's bayou and from heavy rains, as before alleged, being within the scope of country south of the bayou and west of Sabine lake and Sabine Pass, and in proximity to those bodies of water, as before described; that the overflows that occurred previous to the construction of defendant's road never at any time did material damage to plaintiff's land or grass, fruit trees or crops growing thereon; but that since the construction of defendant's road, to-wit, on January 1, 1884, and on divers days subsequently thereto and before the commencement of this suit, his own, and adjacent lands, upon which, with the consent of the owners, express or implied, his cattle and hogs were accustomed to graze, as also the whole surrounding country, were submerged by water to the depth of two feet and more, for a period of about eight weeks, as each overflow occurred, caused by the negligent and improper construction of defendant's road-bed, as before alleged, whereby plaintiff's crops and divers of his fruit trees then growing upon his land, and the grass in his own pasture, and upon adjacent lands, the peaceable, continuous, notorious, uninterrupted and adverse possession of which, as against the owners thereof, plaintiff had held and used as a pasture for more than ten years next before January 1, 1882, and on which his cattle and other stock had, during the time, been accustomed to graze, all of the value of $840, were destroyed; whereby also divers of his cattle and hogs, of the value of $785, were drowned, and others of them died for want of food; whereby also plaintiff lost, for a period of three months, the milk from eight of his milch cows, of great value, to-wit, $100; whereby also plaintiff was put to great expense of his moneys, to-wit, $44.00, in renting other pastures for

those of his live stock that had survived the overflows, and in driving them thereto, and to a further great expense of his moneys, to-wit, $64.00, for horses and their feed, necessarily employed for two months, by reason of the overflows, in carrying, daily, to and from school, plaintiff's children, who were within the scholastic age and who had always previously gone afoot to school; and whereby also his land was made hard and much more difficult of cultivation, its soil greatly washed and rendered less productive. Plaintiff lays his damages at $2,000.

The defendant demurred to the petition, assigning, amongst other grounds, the following : That the petition claims damages for injuries, by the alleged overflows, to lands other than those which he owns or has possession of; that each and every of the subjects or elements of damages set forth in the petition, is too remote, and is not, in law, an element of damages. Defendant also pleaded the general issue and the following special pleas :

1.   That the wrongs and injuries, complained of in the petition, were not the result of negligence or unskillfulness on the part of the defendant or its servants in the construction of its road, but were solely caused by extraordinary rains and floods, which were not, and could not have been, anticipated by the defendant.

2.   That the said wrongs and injuries were not caused by any negligence or unskillfulness on the part of the defendant or its servants, but were caused by the negligence of the plaintiff in locating his premises, fields, crops and fruit trees, and in pasturing his live stock in a locality subject to frequent overflows by the influx of waters from twelve hundred square miles of country, and in the plaintiffs negligently permitting and forcing his live stock to remain in such locality during the alleged overflows.

The court overruled the defendant's demurrer. The cause was tried by a jury, and resulted in a verdict in favor of the plaintiff for $582.99, upon which the court rendered judgment. From that judgment the defendant has prosecuted this appeal. The fifth paragraph of the court's charge, which is assigned as error, is as follows: "The measure of damages for the injury to the plaintiff, as alleged, if any, for being compelled to rent pasture for his cattle, and feed for his horses for the use of his children to ride to school, would be the amount of money paid out by him for such pasturage, with interest thereon from the date of payment, at the rate of eight per cent. per annum, to this date, and for feed for horses the value of such feed, with interest thereon, at the same rate, from the date of furnishing to the present time; and the measure of damages for injuries done to

the land of plaintiff, if any, would be the cost and expense, if any, of restoring the land to its former condition, with interest, at the same rate, from the date of such cost and expenditure to this date.''

*E. P. Hill*, for appellant, on the measure of damages for injury to real estate from overflow, cited: R'y Co. *v.* Edam, W. & W. Cond. Rep., sec. 445; R'y Co. *v.* Court of Appeals, Civil Cases, vol. 2, sec. 807.

*Tom. J. Russell*, for appellee, on the measure of damages, cited: S. & E. T. R'y Co. *v.* Joachimi, 58 Tex. 456; Richardson *v.* Northup, 66 Barb. 85; Seamans *v.* Smith, 46 Barb. 320; Gresham *v.* Taylor, 51 Ala. 505: Smith *v.* Chicago R'y Co., 33 Iowa 518; Bull *v.* Griswold, 19 Ill. 631; Benjamin *v.* Benjamin, 15 Conn. 347.

ROBERTSON, ASSOCIATE JUSTICE.—The measure of damages for negligently deluging the land of another, without permanently taking it, is the value of products, including fruit trees, destroyed and the injury done to the land, and not the difference between the value of the land before and after the overflow. R'y Co. *v.* Harrington, 62 Tex. 597 and R'y. Co. *v.* Helsley, 62 Tex. 593.

This rule entitled the appellee to recover the value of his grass submerged, but not the price of new pastures, or the expense of driving his cattle to them. His failure to claim what he was entitled to, gave him no equity to have applied a rule of compensation not authorized by law. But it is plain from his averment that the removal of his cattle and the lease of other grazing was not the result of flooding the appellee's land. He alleges that his cattle ranged upon several leagues of land in his vicinity, and, recognizing that the flooding of these leagues would give him no cause of action, unless he had some right in or upon them, of which he was deprived, he avers that he had the right to graze these lands, by the consent of the owners, express or implied, and also that he had acquired such right by prescription. A mere license to graze, would not confer such right in the lands as would pass to the appellee any part of the owner's right to recover for all damages done to the league. Certainly no more than a license is averred, and even less is proved. There is, if possible, still less of substance in the averment of the acquisition of a grazing privilege by prescription. Since the fence law of 1840, the owner of unenclosed land has no right of action for the intrusion of stock upon it. The owner has constructive possession of his land and that possession continues until there is actual disseizin by adverse occupancy or use.

The grazing of cattle which strolled upon it is not such use. White-head v. Foley, 28 Tex.. The appellee had no right to graze his cattle on these leagues, but in doing so was guilty of no actionable wrong. In allowing his stock to range on these lands, he asserted no right in the lands and acquired none. The appellee sustained no injury, because he was deprived of no right in the flooding of these lands, and hence, was not entitled to recover the expense of removing his stock or the price paid for other pastures.

The obstruction of the highway caused appellee such special damage as entitled him to an action. Cooley on Torts, p. 614. His children could not walk to school for two months. This compelled them to stay at home or get there by some other means than on foot. If they stayed at home, appellee lost their proportion of the school fund for two months. This sum he was entitled to recover, unless he could obviate its loss by the expenditure of the same or a less amount. If his children's share of the school fund was less than the value of the horse-feed, the share was the measure of compensation; if it was greater, then the value of the horse-feed. The value of the use of appellee's own horses was properly excluded from the computation. It does not appear that the use was damaging, or that they would fare worse on corn than on grass, particularly in the then condition of the grass in appellant's vicinity. The horse which died for want of the grass is not shown to have been one of those that got the corn. The appellee has also assigned errors, which, with a view to another trial, require consideration.

The demand for damages, on account of the poor condition of appellee's stock, and the death of some of them for want of grass not belonging to appellee, was properly disallowed. As before stated, the full measure of compensation for his own grass destroyed is its value. The value of milk, which appellee's cows would have given if they could have grazed on other people's lands, flooded by appellant's negligence, is too remote to be considered. But, if the overflow, without the intervention of other agencies, was directly and proximately the cause of the drowning of any of appellee's stock, he was entitled to recover their value, whether the animals drowned were on appellee's land or not. Moak's Underhill on Torts, pp. 287, 288.

Other points reserved by appellee have been incidentally disposed of, and we think enough has been said to enable the parties, by another trial, to secure the ends of justice. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 29, 1886.]