## E. S. HUGHES v. CITY OF AUSTIN.

### No. 1378.

**1. Pleading—Damages.**

See case for specification of stock killed and injured through getting into mud, and water by reason of wrongful flooding of plaintiff's land, held, on special exception, to be alleged with sufficient clearness and particularity.

**2. Same.**

See case for allegations of damages consisting in expenses incurred by plaintiff in preventing injury to stock caused by overflowing his land, held, on special demurrer, not to be alleged with sufficient certainty.

**·3. Damages—Proximate and Remote.**

Actual damages recoverable for a tort are such as compensate for the injury and were the necessary results of the act complained of, or under the particular circumstances might arise as natural and probable consequences. They are not confined to such as were within the contemplation of the wrong doer when the tort was committed.

**4. Same—Expense of Preventing Damage.**

When a trespass is committed upon the property of another the reasonable expense incurred in good faith in order to protect and preserve the property may be recovered.

**5. Same—Right to Use Property.**

The owner of a pasture rendered dangerous for the use of his stock by partial flooding was not required to cease to use it in order to avoid damage to his stock, but could continue to use it, exercising diligence such as a man of ordinary prudence would adopt to prevent increase of the damages, and he could recover of the wrong doer the value of stock lost in using the premises by reason of his trespass, and also the expense of such reasonable efforts to prevent damage, including the cost of guarding the stock from danger, conveying them to a place of safety and returning

them when danger had ceased, and the difference between the cost of keeping them while so removed from that while in the pasture.

6.   Same.

Whether expenses can be allowed for preventing of damages to property in excess of the value of the property.

APPEAL from Travis.    Tried below before Hon. F. G. MORRIS.

Plaintiff's petition, paragraph thirteen, was as follows:

Plaintiff further alleges and charges that of the hereinbefore mentioned animals, the following described animals, in spite of the efforts and means and care exerted and used by plaintiff as aforesaid to prevent such results, got into said boggy strip of land and bogged down and died, some of them sinking out of sight into said mud; that said animals at the time they so bogged and died in said mud were partly graded, thoroughbred, and partly ordinary American horses, as hereinafter set out, and each and all of said animals were reasonably worth the several sums charged therefor in his petition, in the market of Travis County, Texas, as follows, to-wit: (Here followed a list and description of horses and colts alleged to have died.)

Plaintiff alleges that besides the above animals actually lost to him by death, cause as aforesaid, that 25 mares and 15 geldings were greatly impaired in vitality and strength, stunted and injured, hair rubbed off and sores generated, and the foals of said mares lost prematurely, and said animals were thereby greatly reduced in value in the markets of Travis County, Texas; that said animals were reasonably worth $40 a piece, or in the aggregate $1600 before they were damaged, injured and impaired as aforesaid, but after being so damaged, injured and impaired in vitality, they were only reasonably worth the sum of $27.50 per head, or in the aggregate $1000, and plaintiff was thereby damaged in the full sum of $500, for which he sues.    That all of said animals, those that died and those that survived, had the hair taken off in great patches, and sores produced on many of them caused from getting in said mud, and most of said animals so affected fell away in flesh, and notwithstanding the best feed and care was administered to them they died from the effects thereof, and said mares that survived lost their foals.   Said mud contained some poisonous element that took the hair off of said animals and made sores on them and produced death, said poison being unknown to petitioner.    But petitioner further alleges and charges that besides said causes said animals, after said reservoir had been lowered as aforesaid some distance, thereby causing large ponds of stagnant water to be left between the banks and the Colorado river, through which said animals were forced to pass in order to reach the fresh water in said reservoir, but the banks and bottoms of said ponds were so soft and boggy that said animals could not pass through except in certain places, and refused to pass through unless forced by drivers.    That said ponds contained dead fish in great numbers, and great quantities of dead and decaying bugs, insects and vegetation, which poisoned said water so that it was unfit for

stock to drink.    That before plaintiff was aware of the poisonous qualities in said water, and before he could gather his stock in his pasture, some of the aforesaid animals had drank of said water out of said ponds, from the effects of which they were made sick and died.    That after becoming sick from drinking said water some of said horses went into brush thickets and concealed themselves during the day from the herders. searching for them, and to gather them into the herd plaintiff left his. business in the city of Austin and together with his employes rode his pasture by night and until day in order to catch said horses out of said thickets and place them in his field.

The special exception sustained to the above is as follows:

4    It can not be told from said petition what animals died and which animals were simply injured.    It can not be told which animals were killed by poisonous water and which were simply injured by poisonous. water.

5.    Much of the damage is lumped and not distinctly set out.

6.  · The whole paragraph wherein it attempts to set out damages to. horses, etc., is jumbled and unintelligible and fails in clearness, and of this defendant asks the judgment of the court.

Plaintiff's trial amendment, substituted for paragraph twelve of his. petition, was as follows:

Plaintiff further avers and alleges that in order to save, guard and protect his said animals from being injured by becoming mired and bogged in said mud banks, and dying therein or from the effects thereof,. employed T. W. Preece, A. A. Reed, C. B. Enochs, O. K. Enochs, L. C. Counts, A. Larkin, Geo. Hancock, T. N. Bryson, Anderson Pickett,. Chas. Lohman, Jerry Barton and Eli Crane to watch, herd, line ride, ride pasture after, guard, protect and round up and move from one pasture to another, water, rescue from bog and mud, care for and doctor said animals, and feed them and keep them away from said mud banks. and mire.    (Then followed a statement of the amounts paid to each person and the number of day's work paid for, with allegations that the· dates could not be more accurately given.)

Plaintiff says that the above items of expense are exact, and the dates. thereof are as near as can be given, and each and every one of said items. are fair and reasonable pay for service rendered, and each and all of said sums were expended by plaintiff in protecting, guarding and caring for said animals to prevent them, or any of them, from getting in  said mud banks and miring and being injured therein; that all of said above named hands line rode, herded, guarded, protected, watched, fed, pulled or assisted in extricating said animals from said bogs, drove said animals. to and from pasture during the several times of their respective employment, and no more particular or definite statement of the particular work done by each can be given.

That in order to keep said animals from getting into said bog and thereby either dying or being greatly injured, plaintiff was forced to place· said animals in a field on plaintiff's said land known as the river field.

That there was growing on said field a fine crop of hay; that said hay was reasonably worth $50; said hay was pastured down as aforesaid in July and August, 1893, and said hay would not have had to have been so pastured down by plaintiff but for the acts of defendant as aforesaid. That for like reasons plaintiff was forced to pasture down a crop of sorghum in another field on said place with said animals during the months of August and September, 1893; that there were ten acres of said sorghum, and there were four tons to the acre, making forty tons, reasonably worth $6 per ton, $240. Plaintiff avers that each and every item of expense aforesaid was reasonable and necessary and was caused by the gross and inexcusable negligence of defendant, and said acts of defendant are the proximate cause thereof, and said animals could not have been protected and cared for in any other manner without going to an expense far in excess of the sum here sued for. Plaintiff sues for each and all of said items of damages, same being the sums in which he was damaged by defendant by the acts aforesaid. The amendment is intended to amend said paragraph 12, of the second amended original petition.

The above trial amendment was stricken out by the court, sustaining the defendant's exceptions contained in first supplemental answer as follows:

Defendant excepts to and moves the court to strike out each and every item of damage set out in the trial amendment, because it does not appear that said damages are the natural and proximate results of the acts charged against defendant, and because each and every of said items are too remote to form the basis of recovery, and because said items are not set forth with sufficient certainty. And defendant specially excepts to the charges for hay and sorghum, because it is not alleged that plaintiff was the owner of said hay and sorghum, or that he ever paid or agreed to pay for the same.

*George S. Walton*, for appellant.—1.   The court erred in sustaining defendant's exceptions to the thirteenth paragraph of plaintiff's petition.

2.   The court erred in sustaining defendant's exceptions to plaintiff's trial amendment.   Railway v. Curry, 64 Texas, 85; Hope v. Alley, 9 Texas, 395; Railway v. Cocke, 64 Texas, 151.

3.   The general allegation of damages will suffice to let in proof and warrant recovery of all such damages as naturally and necessarily result from the wrongful act complained of.   The law implies such damages, that is, damages of that sort, and proof only is necessary to show the extent and amount.   Railway v. Curry, 64 Texas, 85, and authorities there cited.

No briefs for appellee have reached the Reporter.

FISHER, CHIEF JUSTICE.—The city of Austin erected a dam across the Colorado river which caused the waters of the river to flow back and

permanently submerge lands of the appellant fronting the stream. Afterwards the city caused the waters to be temporarily lowered, and as a result thereof mud banks and stagnant water were left exposed between the water front of plaintiff's land and the channel of the river. As a result of these acts, in the suit of appellant against the city, various items of damages are claimed, but we will confine our attention to those claimed in paragraphs 12, 12½ and 13 of the original petition, and those set up in the trial amendment; for on the other branches of the case the appellant was successful, and in his appeal only complains of the ruling of the court in sustaining demurrers to the 12th and 13th paragraphs of the petition, and to the trial amendment.

The averments of the 13th paragraph of the petition are to the effect that by reason of the mud banks and stagnant water caused by lowering the waters in the river, and in spite of his efforts to prevent a loss of his stock, a number of his horses got into the mud and stagnant waters and there died, and others died from the effects thereof after being rescued, and that a number were also injured from the effects of getting into said mud and stagnant water and therefore deteriorated in value. The averments state the number of horses that died and give the value of each, and state the number that were injured, and the extent and loss thereby. The paragraph then continues to state further facts showing how and in what manner the horses were injured, and the causes thereof, and in these subsequent statements a slight confusion arises as to the number that died, and as to those that were only injured. The demurrers addressed to this branch of the case, and which were sustained, in effect complain that the averments are uncertain in distinguishing between those killed and those simply injured, and that the allegations are not clear and certain.

This count in the petition could have more accurately and clearly stated the matters complained of by the demurrers, but a close reading of these averments indicates with reasonable certainty that the plaintiff is seeking to recover the value of a definite and stated number of horses killed and a given number of horses injured. Therefore we are of the opinion the court erred in sustaining these demurrers, and for this reason the judgment below will have to be reversed. Other demurrers were addressed to this branch of the case on the ground that the damages claimed were remote. They were not sustained by the trial court, which ruling, we think, was proper.

The 12th paragraph of the petition claimed as items of damages the expense incurred in efforts made to prevent or keep horses of plaintiff from getting into the mud banks and in recovering them therefrom, and for the expense incurred in efforts to cure the horses of the injuries received by reason of the mud, and the expense of looking after them and conveying them to and from a pasture in order to remove them from the opportunity of getting into the mud; and also the value of certain hay and sorghum owned by plaintiff which was fed to and pastured by the horses. Demurrers were sustained to this paragraph of the petition

because the allegations were too vague, general and indefinite to apprise the defendant of the necessity and purpose of the expenditures; and as a further ground, to the items of hay and sorghum, that the damages claimed as the value thereof were too remote.   An attempt was made to meet these objections by a trial amendment, demurrers to which were sustained on the ground that the damages claimed were not the natural and proximate results of the acts charged against the defendant, and that the items were not set forth with sufficient certainty; and as a further ground, to the allegations of damages arising for the value of the hay and sorghum, it does not appear that the plaintiff was the owner thereof. The trial amendment expressly states that it is intended as a substitute for paragraph No. 12 of the petition, therefore in determining the sufficiency of the pleadings as to this branch of the case we will be confined to what is alleged in the trial amendment, together with what is stated in paragraph No. 12½ of the original petition.   This latter paragraph was not questioned by demurrer and should be considered along with the trial amendment, as they both relate to the same matters and items of damages.   In fact both, when construed together, are the pleadings we must look to in this branch of the case when ascertaining if, or not, the items of damages are stated with sufficient certainty, and if they are or not, the proximate and natural result of the original wrong.   The trial amendment in effect states that in order to prevent and protect his animals from being injured by becoming mired in the mud banks and from dying, the plaintiff employed certain hands, naming them, and giving the amounts expended therefor, to look after said stock and guard same from the dangerous mud banks and stagnant water, and also claimed certain items for caring for certain of the animals in an effort to relieve and cure them of injuries received from entering the mud; and also seeks to recover the expense of moving said animals to another pasture, and returning them to the plaintiff's pasture, and the expense of hiring two men to look for and obtain another pasture.   The amendment also repeats the claim for the items of the value of the hay and sorghum fed the stock, and in this connection we desire to say it alleges with sufficient certainty that the plaintiff was the owner of the hay and sorghum.   The amendment then proceeds with the statement that the amounts expended are the fair and reasonable value of items named, and were necessarily incurred in order to prevent the stock from getting into the mud banks, and that a resort to other methods of protection would have increased the expense thereof greater than·the sum claimed, and also that in order to prevent the loss of his stock he was forced to the necessity of placing said animals in the field in which was growing the hay and sorghum. There are uncertainties that arise from these averments when considered with paragraph 12½ of the petition that may be pointed out in several particulars.   Paragraph 12½ of the petition lays the damages for the items stated other than the sorghum and hay at $294.70, and the amount of damages claimed in the trial amendment, other than for the hay and sorghum, is $179.90.   Considering these two·pleadings in connection

breeds uncertainty what amount plaintiff is seeking to recover for these items. The trial amendment avers that plaintiff was forced to place said animals, in order to keep them from getting into the mud, in the field of hay and sorghum in July and August and September, 1893, and for the value of the hay and sorghum consumed by them he claims damages. The said animals referred to are the same animals for which he states he incurred expense in keeping out of the mud and looking after, and it appears from the dates of some of the items that the expense of keeping the animals out of the mud banks and guarding them from such danger occurred in July, August and September, 1893. If the animals were placed in the field of hay and sorghum in order to remove them from the danger of getting into the mud, and this, as we infer from the facts pleaded, was a different place from where the mud was located, then the appellant should not be permitted to recover expenses in keeping the stock out of the mud. If they were placed in the pasture of hay and sorghum away from the mud there was no occasion to incur expenses in keeping them out of the mud. There is another objection to the cause of action set up in this branch of the pleadings which possibly should be considered as coming within that objection urged by the demurrer to the effect that the damages claimed are remote, but we will consider it now under the discussion of those features of the pleadings which are excepted to as uncertain.

The plaintiff, as before observed, sues for the value of certain hay and sorghum owned by him and fed to the animals in question. He charges in his petition for the full value of this property. He could not recover for its full value. It was his duty to feed his stock, and to some extent this resulted in a benefit to his horses. If he was deprived of the use of his pasture fronting on the water by reason of the mud banks, and that pasture would supply the requisite feed for his stock, and he was forced in order to preserve his stock to remove them from the river front, and place them upon other and more expensive feed, and the incurring of such extra expense was reasonable under the circumstances, he could recover the difference between the expense and cost of keeping them where they were when the trespass was committed and the value of the hay and sorghum, if any. If the trespass occasioned him a greater expense in keeping the stock than existed before, that difference, if reasonable, could be recovered. Railway v. Hume, 27 S. W. Rep., 110. For the reasons stated there was no error in sustaining the demurrers to these averments on the ground of uncertainty.

We will now consider if the items of expense claimed in this count of the petition are too remote, or if they are the natural and proximate results of the tort. When an action is for a tort committed the actual damages recoverable are such as will compensate the injury and which arise as the necessary result of the act complained of, or that under the particular circumstances may arise as the natural and probable conse- quences of the wrong committed. Moore v. King, 4 Texas Civ. App., 398; 1 Suth. Dam., 21. The theory of recovery of consequential dam-

ages that arise from torts is not based upon injuries and damages that are within the contemplation of the wrongdoer when the tort is committed, but recovery may be had for all damages which are the natural and proximate consequences of the wrongful act, and as to such consequences he is put upon contemplation of the results that are likely to follow from his conduct, although in fact he may have no actual knowledge that such consequences may result. 3 Suth. Dam., 385; 1 Suth. Dam., 20, 21; Moore v. King, 4 Texas Civ. App., 403; 5 Am. & Eng. Encycl. Law, 6 to 9 and notes. A further rule to be observed is that when a trespass is committed upon the property of another, the reasonable expense incurred in good faith in order to protect and preserve the property may be recovered. 3 Suth. Dam., 260, 478, 480; 1 Suth. Dam., 148, 106; Railway v. Keith, 74 Texas, 289.

With these principles for our guide, it ought not to be difficult to determine that the items and expense claimed in the main are the natural and proximate consequences of the original wrong. Plaintiff had the right to enjoy his property in any lawful way that it may have been useful to him, and when in the exercise of a lawful use the city submerged his lands and caused the dangerous mud banks to appear along his water front by lowering the water the plaintiff was not required to abandon his property and cease to use it. Clarke v. Dyer, 81 Texas, 344. But he could continue its use in a way beneficial to him, but with the exercise of reasonable diligence in order to prevent increasing the damages that were likely to follow from the wrong committed.

This principle is well stated by the Supreme Court of Michigan in Gilbert v. Kennedy, 22 Mich., 132, in the following language: "But it is urged that a party against whom a trespass is committed has no right, by his own action or by neglecting the obvious and ordinary means of preventing or lessening the damages, to make them more than they otherwise would have been. This, as a general principle, is true. Whether it is applicable at all to the facts of the present case, is only important as it bears upon the duty of the plaintiff, when the defendant's cattle were wrongfully turned in, to remove his own cattle from the pasture before they should be injuriously affected by the over-feeding caused by defendant's cattle, or to prevent, at any particular time, further injury from this cause.

"The plaintiff in error, adopting the general rule alluded to, makes it his premise for the conclusion that such was the duty of the plaintiff; and that, not having removed his cattle when the defendant's were turned in, or as soon as he was aware of the injury therefrom to his own, he can not recover of the defendant more than pasturage was worth, because, still basing his argument upon this assumed duty—for it has no other basis—the plaintiff should, at once, have obtained the necessary pasture for his cattle elsewhere; and that therefore the only proper rule of damages in the case is what such pasture would have been worth. Is this reasoning sound as applied to the facts of this case? As between the plaintiff and the defendant, did any such duty rest upon the former?

"The rule in question, if based upon the supposed duty, is simply one of good faith and fair dealing. If a man tortiously injures the roof of my dwelling, and I obstinately leave it in that condition, and having the opportunity refuse or neglect to repair until the furniture and bedding in the house are injured or destroyed by the rains, I can not recover of him for this injury to my furniture and bedding which I might have avoided by timely repairs. And if a man come to my field, where my cattle are grazing, turn them out into the street, and turn his own cattle in, thus ousting me from the possession and claiming and holding exclusive possession against me, I can not leave my cattle in the street to starve, and then charge him with their full value, if it be practicable, by reasonable effort on my part, to procure other pasture or feed for them; but I can recover only such damages as I have suffered beyond what I might have avoided by reasonable diligence. But if he come to the same field and wrongfully turn his cattle in with mine, neither taking or claiming any exclusive possession, and, as often as I run his cattle out, he persists in turning them in again, till I find it impracticable to keep them out without coming to blows and cease to attempt it, and my cattle from this cause are deprived of necessary feed, and I resort to a suit as my only remedy, which is substantially the present case, at what particular point in this series of tortious conduct does good faith to him require me to turn my own cattle from my own field and find pasture for them elsewhere to save him from liability for their further injury from his repeated or continuous wrongs? Have I not a better right to insist that he shall, and to presume that he will, relent and cease the continuance of his tortious acts, than he has to claim that I shall remove my own cattle from my own field and leave it to him? Is it not rather his duty to cease the continuance of his wrongs, than mine to give up my acknowledged right? The damages in such a case are in no proper sense increased by any act or negligence of mine, but by the continuance of his own tortious conduct. As to the question of duty, as well might it be said if he had repeatedly assaulted and beaten me and my family in my own house, and declared his intention of repeating the process as long as we should remain there, it would be my duty to remove myself and family from the house to avoid increasing the damages which might otherwise accrue from his further continuance or repetition of the like conduct." When the appellant was in the exercise of this right and by reason of the wrongful conduct of appellee it became dangerous for his stock to enter the mud and stagnant water and he resorted to useful and reasonable means to prevent this, the expenses so incurred, if reasonable, are as much the natural and proximate result of the tort as would be the value of the horses if they had entered the mud and died. Both items would be traceable to the original wrong. The owner has the undoubted right to protect his property from threatened danger and to resort to reasonable expedients to accomplish this end; and when a tort feasor has by his unauthorized conduct brought about the situation that requires the exercise of this

right in the owner, he can not be heard to say that such consequences are not the natural and proximate result of his conduct.

The city was undoubtedly liable for the horses that got into the mud and died, and those that were injured thereby, provided the conduct of the city caused the dangerous mud banks to form along the water front of the plaintiff's land; and this liability extended so long as the danger existed.   If the plaintiff had the privilege to use his land he could place his stock upon it, and if the defendant wrongfully created a dangerous agency that would make it hazardous to such use the plaintiff had the right to guard against it.   If the defendant was liable for the value of the horses killed or injured in the first instance, would it not be unreasonable to hold that the plaintiff should sit by and supinely witness the destruction of his property, and then seek liability against the defendant, when by means at hand, with a reasonable expense, he could prevent the loss and thereby lessen the extent of damages for which the defendant may be ultimately liable.   Such a contention it seems to me would be unsound, and a defendant so situated should not be allowed to urge it. For reason suggests that as the defendant would be held liable for the value of the property that is lost as a result of his conduct, he should also be held liable for the reasonable expense incurred in preventing such loss, and in the latter case such expense would be as much the natural and proximate result of the wrong as the loss would be in the former. The reasonable expense incurred in guarding the animals from the threatened danger and in conveying them to a place of safety, and returning them when the danger ceased, are recoverable.  Also may be recovered the reasonable expenses incurred in efforts to cure and heal the injuries sustained by the animals as the result of getting into the mud.   Those items of expense stated in the pleadings that fall within these classes should remain, those that do not should be stricken out; of course, provided that this method of preserving the stock from loss and injury was a prudent and economical course to pursue under the circumstances, such as one of ordinary prudence would adopt, and that the expenses incurred were reasonable.   Johnson v. Holyoke, 105 Mass., 82.   Many authorities may be cited to support this ruling, among which are Railway v. Johnson, 65 Texas, 389; Broussard v. Railway, 80 Texas, 331; Railway v. Keith, 74 Texas, 289; 5 Am. & Eng. Encycl. Law, pages 5 to 10, with notes; McAfee v. Crofford, 13 How., 454; O'Reily v. McChesny, 3 Lansing, 279; Gillett v. Railway, 8 Allen, 560; Railway v. Cornelius, 30 S. W. Rep., 720; Railway v. Newton, 30 S. W. Rep., 475; Donahoe v. Scott, 30 S. W. Rep., 385; Johnson v. Holyoke, 105 Mass., 81; Keyes v. Railway, 36 Minn., 294; Dean v. Railway, 43 Wis., 309; Harrison v. Railway, 88 Mo., 625; Streett v. Laumier, 34 Mo., 469; Ellis v. Hilton, 6 L. Rep. Ann., 455 (78 Mich., 150); 3 Sutherland Damages, 382, 384, 385, 477, 478, 479, 480; 1 Sutherland Damages, 148, 121, 106, 96.   And for a collection of cases upon the subject of remote and proximate cause see 1 Sutherland Damages, 17 to 74, where the question is fully discussed.   Olsen v. Brown, 41 Wis., 413, indicates the tenor of the authorities cited.   There the

defendant wrongfully struck the plaintiff's horses attached to a sleigh, causing them to run and throw off a load of wood then upon the sleigh being hauled to market, breaking the sleigh and harness. It was held that it was proper to consider as elements of damages the labor and cost of reloading the wood, the delay in getting to market, the time and expense in making repairs to the harness and wagon, and the injury done to the horse.

The extent to which damages may be recovered for expenses incurred in preserving the property from loss is a debatable question which we do not feel called upon at present to decide. The question is not directly presented so as to require a decision, as it does not appear from the averments that the plaintiff is seeking more for expenses than the value of the property. There is a line of cases, of which are Ellis v. Hilton, 6 Law. Rep. Ann., 454 (78 Mich., 150), and Railway v. Keith, 74 Texas, 289, that holds that the plaintiff may recover a sum as expenses paid greater than the value of the property if they were incurred in good faith. Another line of cases, of which Keyes v. Railway, 36 Minn., 294, is a leading one, holds that for the reasonable expense incurred in good faith recovery can not exceed the value of the property.

*Reversed and remanded.*

Delivered January 8, 1896.