## CHARITY B. ISHAM *vs.* THE ESTATE OF ISAIAH DOW.

### May Term, 1898.

Present: Ross, C. J., ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

*Liability for Wanton or Negligent Act—Proximate and Remote Causes— Damages.*

Whether an act was negligent may depend upon whether it could have been foreseen that damage would result, but when negligence is established it imposes liability for all the injurious consequences that flow therefrom, whatever they are, until the intervention of some diverting force that makes the injury its own, or until the force set in motion by the negligent act has so far spent itself as to be too small for the law's notice. ·

One who by his wantonness or negligence sets in motion a force which, without the intervention of any independent agency, results in damage to another, is liable, whether the damage could have been foreseen or not.

In questions of this character, proximity and remoteness relate to the connection of cause and effect, not to the intervention of space or time.

The defendant wantonly shot a dog lying peaceably near his owner's house, knowing that the owner's wife and children were alone within; whereupon the wounded dog sprang up and rushed into the house knocking down and injuring the wife. *Held,* that the defendant was liable to the wife, and could not maintain that he owed her no legal duty nor that the negligence was too remote.

· TRESPASS AND CASE. Plea, general issue; trial by jury at the September Term, 1897, Chittenden County, *Taft,* J., presiding; verdict and judgment for the defendant.

Upon request, the plaintiff stated what her evidence would tend to show, the substance of which is recited in the opinion, and the court ruled that such facts if established would not entitle the plaintiff to recover and excluded the evidence and directed a verdict for the defendant. The plaintiff excepted.

*Seneca Haselton* and *J. E. Cushman* for the plaintiff.

It is immaterial whether the damages could have been foreseen. *Stevens* v. *Dudley,* 56 Vt. 158; *Gilson* v. *Del. &*

*Hud. Canal Co.*, 65 Vt. 213; *Brown* v. *Chicago, etc. Ry. Co.*, 54 Wis. 342: 41 Am. Rep. 41; *Leame* v. *Bray*, 3 East 286; 1 Sedgwick on Damages, (8th ed.) § 111; *Scott* v. *Shepherd*, 2 W. Bl. 892: 3 Wils. 403; *Ins. Co.* v. *Seaver*, 19 Wall. 531; *Vanderburgh* v. *Truax*, 4 Denio 464; *Salisbury* v. *Herchenroder*, 106 Mass. 458: 8 Am. Rep. 354; Beach on Contr. Neg. 65, (2d ed.) §§ 64; *Forney* v. *Geldmacher*, 75 Mo. 113: 42 Am. Rep. 388; *Ricker* v. *Freeman*, 50 N. H. 420: 9 Am. Rep. 267; *Billman* v. *R. R. Co.*, 76 Ind. 176: 40 Am. Rep. 230; *Thomas* v. *Winchester*, 6 N. Y. 397: 57 Am. Dec. 455.

*W. L. Burnap* and *Henry Ballard* for the defendant.

The intestate committed no breach of any legal duty that he owed the plaintiff, because no reasonably prudent man would have recognized that to shoot under those circumstances would be a wrongful or imprudent act. This is the test. Sherman and Redfield on Neg. 6, 12.

It was for the court to say whether the legal duty existed, and whether, upon the undisputed facts, there had been a breach of the duty. *Latremouille* v. *Ry. Co.*, 63 Vt. 336; *Worthington* v. *R. R. Co.*, 64 Vt. 107; *Magoon* v. *R. R. Co.* 67 Vt. 185.

At any rate the negligence was too remote. *Stevens* v. *Dudley*, 56 Vt. 158; *Gilson* v. *D. & H. Co.*, 65 Vt. 215; *Ellis* v. *Cleveland*, 55 Vt. 358; *Holmes* v. *Fuller*, 68 Vt. 207; *Ryan* v. *N. Y. C. R. R. Co.*, 35 N. Y. 210; *Sturgis* v. *Kountz*, 165 Pa. 358; *Renner* v. *Canfield*, 36 Minn. 90.

ROWELL, J. Dow, the intestate, a poor gunner, as he knew, with eyesight much impaired, knowing that the plaintiff and her children were alone in her husband's house, unlawfully, wantonly and maliciously shot at and wounded her husband's dog, lying peaceably in close proximity to the house on the land of a third person, whereupon the dog sprang up, rushed wildly and rapidly towards the house, entered it through an open door into the room where the plaintiff was, ran violently and forcibly against her,

knocking her down and injuring her; and the question is, whether the estate is liable for it.

The defendant says that in order to recover the plaintiff must establish two things, namely, negligence on the part of Dow, and that her injury resulted proximately therefrom, and that the case shows neither, as it does not show that Dow owed her any legal duty, nor that his act was the proximate cause of the injury.

But we cannot adopt this view. The intestate unlawfully, wantonly and maliciously shot at the dog, intending, we will assume, to kill it, but not knowing whether he would or not, and not knowing what would happen if he did not, and by his wanton act the dog was set wildly in motion, and that motion, thus caused, continued, without the intervention of any other agency, and without power on his part to control it, until the plaintiff's injury resulted therefrom. In these circumstances the law treats the act of the intestate as the proximate cause of the injury, whether the injury was, or could have been, foreseen or not, or was or not the probable consequence of the act, for the necessary relation of cause and effect between the act and the injury is established by the continuous and connected succession of the intervening events.

This is the universal rule when the injurious act is wanton. In 16 Am. and Eng. Ency. of Law, 434, the true principle is said to be, that he who does such an act is liable for all the consequences, however remote, because the act is *quasi* criminal in its character, and the law conclusively presumes that all the consequences were foreseen and intended. But it is not necessary in this State, certainly, that the act should be wanton in order to impose liability for all the injurious consequences. If it is voluntary and not obligatory it is enough. In *Vincent* v. *Stinehour*, 7 Vt. at 66, it is said that for such an act the doer is answerable for any injury that may happen by reason thereof, whether by accident or carelessness. In *Wright* v. *Clark*, 50 Vt. 130, the defendant

shot at a fox that the plaintiff's dog had driven to cover, and accidentally hit the dog, and he was held liable, because the shooting at the fox was voluntary, and furnished no excuse for hitting the dog, though he did not intend to hit him. The same rule was applied at *nisi prius* without exception in *Taylor* v. *Hayes*, 63 Vt. 475, where the defendant shot at a partridge and accidentally hit a cow. So in *Bradley* v. *Andrews*, 51 Vt. 530, the defendant voluntarily discharged an explosive missile into a crowd and hurt the plaintiff, and it was held that as the act was voluntary and wrongful, the defendant was liable, and that his youth and inexperience did not excuse him.

The rule is the same here in negligence cases, and may be formulated thus: When negligence is established, it imposes liability for all the injurious consequences that flow therefrom, whatever they are, until the intervention of some diverting force that makes the injury its own, or until the force set in motion by the negligent act has so far spent itself as to be too small for the law's notice. But in administering this rule, care must be taken to distinguish between what is negligence and what the liability for its injurious consequences. On the question of what is negligence, it is material to consider what a prudent man might reasonably have anticipated; but when negligence is once established, that consideration is entirely immaterial on the question of how far that negligence imposes liability. This is all well shown by *Stevens* v. *Dudley*, 56 Vt. 158, and *Gilson* v. *The Delaware & Hudson Canal Co.*, 65 Vt. 213. The rule is the same in England, as will be seen by refering to the leading case of *Smith* v. *The London & South-Western Railway Co.*, L. R. 6 C. P. 14, in the Exchequer Chamber. In *Sneesby* v. *The Lancashire & Yorkshire Railway Co.*, L. R. 1 Q. B. D. 42, a herd of plaintiff's cattle were being driven along an occupation road to some fields. The road crossed a siding of the defendant's railway on a level, and when the cattle were crossing the siding the defendant's servants negligently

sent some trucks down the siding amongst them, which . separated them from the drovers and so frightened them that a few rushed away from the control of the drovers, fled along the occupation road to a garden some distance off, got into the garden through a defective fence, and thence on to another track of the defendant's railway and were killed; and the question was whether their death was not too remote from the negligence to impose liability. The court said that the result of the negligence was twofold; first, that the trucks separated the cattle, and second, that the cattle were frightened and became infuriated and were driven to act as they would not have done in their natural state; that everything that occurred or was done after that, must be taken to have occurred or been done continuously; and that it was no answer to say that the fence was imperfect, for the question would have been the same had there been no fence there. Then liability was made to depend, not on the nearness of the wrongful act, but on the want of power to divert or avert its consequences; and it continued until the first impulse spent itself in the death of the cattle. See *Ricker* v. *Freeman*, 50 N. H. 420: 9 Am. Rep. 267; *Alabama etc. R. R. Co.* v. *Chapman*, 80 Ala. 615.

*Ellis* v. *Cleveland*, 55 Vt. 358, is not in conflict with the Vermont cases above cited, as is supposed, for there there was no causal connection between the wrongful act and the injury complained of, and so there could be no recovery. As illustrative of non-liability for damage flowing from an intermediate and independent cause operating between the wrongful act and the injury, see *Holmes* v. *Fuller*, 68 Vt. 207.

*Ryan* v. *The New York Central R. R. Co.*, 35 N. Y. 210, is relied on by the defendant. *The Pennsylvania R. R. Co.* v. *Kerr*, 62 Pa. St. 353, is a similar case. It is said in *Milwaukee, etc., R. R. Co.* v. *Kellogg*, 94 U. S. at p. 474, that these cases have been much criticised; that if they were intended to hold that when a building has been negligently

set on fire, and a second building is fired from the first, it is a conclusion of law that the owner of the second has no remedy against the negligent wrong-doer, they have not been accepted as authority for such a doctrine even in the state where they were made, and are in conflict with numerous cases in other jurisdictions. Judge *Redfield* says in 13 Am. Law Reg. N. S. 16, that these cases have not been countenanced by the decisions in other states. And Judge *Cooley* says that a different view prevails in England and most of the American states; that the negligent fire is regarded as a unity; that it reaches the last building as a direct and proximate result of the original negligence, just as a rolling stone put in motion down a hill, injuring several persons in succession, inflicts the last injury as a proximate result of the original force as directly as it does the first, though if it had been stopped on the way and started again by another person, a new cause would thus have intervened, back of which any subsequent injury could not be traced; that proximity of cause has no necessary connection with contiguity of space nor nearness of time. Cooley on Torts, 1st ed. 76.

*Judgment reversed and cause remanded.*