## DALLAS JOINT STOCK LAND BANK OF DALLAS v. RANDERSON et al.

### No. 12653.

Court of Civil Appeals of Texas. Dallas.

March 18, 1939.

Rehearing Denied April 15, 1939.

594

McCombs & Andress, of Dallas, for appellant on the merits.

Lawther, Cramer, Perry & Johnson, of Dallas, for appellant on rehearing.

Ayres & Ayres, of Floydada, and Malone, Lipscomb, White & Seay, of Dallas, for appellees.

YOUNG, Justice.

This appeal followed the sustaining of general demurrer and all special exceptions to appellant's trial pleading. Referring to the parties as in the trial court, the defendants were E. S. Randerson, Sheriff of Floyd County, and United States Fidelity & Guaranty Company, surety on his official bond. Previous to the instant litigation, and in the 101st District Court of Dallas County, plaintiff had obtained judgments of foreclosure on three tracts of land in Floyd County—A. N. Gamble being the judgment debtor. Proper orders of sale were directed to Randerson, as sheriff, who levied on the lands with due notice given for statutory sale at the Floyd County court house door on August 7, 1934, between the hours of 10 A. M. and 4 P. M. The sales made on the date just mentioned were set aside by the District Court of Dallas County upon motion of plaintiff, after hearing, and the lands ordered resold. Accordingly, on August 4, 1936, lawful sales were consummated and the property struck off to plaintiff for $9,500, which was credited on the judgments. Thereupon, plaintiff filed in the original Dallas County cases (apparently consolidated for the purpose) a pleading styled "Motion for Judgment Against Sheriff and Sureties", alleging that on the first sales day above—August 7, 1934—C. B. Harder, plaintiff's agent, had made an appointment with the defendant Sheriff and his deputy to be present at the sale, for the purpose of bidding, the agreed time being 11:30 A. M.; but, notwithstanding such agreement, the Sheriff had proceeded to hold the sale at 11 o'clock, at the side entrance of the court house, not being the place provided by law for holding sales, no bidders being present except the judgment debtor, A. N. Gamble, and the properties were struck off and sold to the wife of said Gamble for $10 per tract; that plaintiff's agent had later arrived before deeds were executed to the purchaser, made written bids to the Sheriff for the full value of the lands, advising the latter that the aforesaid bids would have been made at the earlier sale, had he been present; protesting the sales as improper, but, nevertheless, defendant Sheriff executed deeds conveying the property to the wife of said Gamble. Plaintiff then alleged the filing of motions in the District Court of Dallas County to set aside the sales as fraudulently made and contrary to law; the issuance of injunction to the purchaser thereunder against disposition thereof; and upon later hearing, the sales and deeds were, in fact, vacated and set aside, the lands being ordered resold by any constable of Floyd County. Plaintiff alleged prompt and continuous efforts to again sell the property, but the judgment debtor, Gamble, had procured his nieces and nephews to file proceedings under the U. S. Bankruptcy Act, and it was thereby prevented from making sales by reasons of injunctions and collateral hearings until August, 1936. Plaintiff then averred that the initial sales by the Sheriff were false, fraudulent and wrongful; and on account thereof, it had suffered actual damages, which would not have been occasioned had the first sales

been regular. These damages and alleged necessary expenditures consisted generally of: Actual expenses incurred in setting aside the sale; traveling and other costs incident to various bankruptcy hearings; witness fees, State and Federal Court costs; appointment of constable of Floyd County, and his fees in attempting sales, and in finally effecting sales; attorney's fees incurred in defeating the litigation undertaken by the judgment debtor; damages in being deprived of the monies for which the property was finally sold, being eight per cent. interest on the sum of $9,500; and for exemplary damages against defendant Randerson, under allegations of malice, wilful and fraudulent conduct.

The counter propositions of appellees in support of the trial court's action are, in substance, (1) the petition in question being a motion under Art. 3819, R.S., shows no violation of such statute, except as to the place of the first sale (the side door of the courthouse), it not being alleged that this infraction resulted in the damages claimed; (2) plaintiff had two distinct and inconsistent remedies for the sheriff's alleged wrongful acts; and having elected to prosecute its remedy of setting the sale aside, was barred from pursuing any consequent action for damages; (3) all expenses and costs of the bankruptcy litigation were independent and intervening matters with which the Sheriff had no connection, his liability being limited to the proximate consequences of his own alleged wrongful acts; (4) there were no allegations that the $2,500 claimed as attorney's fee was reasonable, customary, or proper; or that plaintiff had paid, or was obligated to pay same, or any part thereof; (5) the damage claim of interest on the purchase bid of $9,500 was wholly unfounded, in absence of allegations that plaintiff was deprived of possession of the lands, or that sales were lost during the two-year period by reason of the Sheriff's alleged conduct; (6) want of fact allegations, and actual damages, on which to base any claim for exemplary or punitive damages.

As we are reviewing the action of the trial court upon demurrer, our inquiry into the record must be limited to an examination of the form and nature of plaintiff's pleading; and the damages properly recoverable thereunder. While it is apparent that plaintiff commenced this suit in the trial court by motion and five days' notice under the provisions of Art. 3819, R.S., yet a recovery is also sought under Art. 6873, and for breach of official bond (Art. 6866); the suit comprehending, in effect, a common law action for damages both actual and exemplary. Following are the provisions of Art. 3819, Title 56, Execution: "Any officer who shall sell any property without giving the previous notice herein directed, or who shall sell the same otherwise than in the manner prescribed herein, shall forfeit and pay to the party injured not less than ten nor more than two hundred dollars in addition to such other damages as the party may have sustained, to be recovered on motion, five days notice thereof being given such officer and his sureties."

Appellees insist that the above is a summary statute which should be strictly construed, and plaintiff's motion shows no violation of Title 56; (38 Tex.Jur. Sheriffs and Constables, Sec. 76, p. 518) or, considering the same as the basis of an ordinary civil suit, plaintiff has simply invoked the wrong remedy and should be limited in its relief to the precise terms of the quoted Article; wherefore, the motion should be dismissed without prejudice to a right to file an independent suit. The petition of the Bank, though denominated a motion, disregards the penal provisions of the statute, and (aside from exemplary features), seeks recoupment for alleged actual losses. In Murray v. Evans, 25 Tex. Civ.App. 331, 60 S.W. 786, 787, the Austin Court, discussing a motion filed under a companion statute, Art. 2386 (now art. 3825) held: "Though the proceeding was by motion in the original suit, and, under the statute referred to, the cause of action set up, and the relief sought, were such as might have been set up and invoked in a common-law action against defendant for failure to execute the process, in one sense only the proceeding is summary: It authorizes a judgment plaintiff to proceed immediately against the defaulting officer in the court where the original judgment was rendered, but it is not summary in any other respect, and is not, in any proper sense, a proceeding to recover a penalty. No more can be recovered in a proceeding under the statute in question than could be recovered in a common-law action. Therefore the proceeding is not in the nature of a criminal or penal action. When the statute is analyzed, it will be seen that it merely author-

izes a suit to be brought against the officer in a different form and earlier than perhaps it otherwise could be brought, and, in some instances, fixes the venue different from what it otherwise would be".

The case of Buckholts State Bank v. Thallman, Tex.Civ.App., 196 S.W. 687, 690, involving the same statute, was by independent suit against the sheriff and the sureties instead of by motion as required. Chief Justice Key there said: "But counsel for appellee make the contention in this court that it is apparent from the face of the petition under consideration that appellant asserted no right and sought no relief under the statute, but sought to recover against the sheriff and his sureties and the defendant Thallman upon a common-law right of action. True it is the plaintiff did not denominate its pleading a 'motion,' and it is also true that it sought to recover against Thallman upon the theory that he had conspired with and induced Smith, the sheriff, to commit the wrongful acts charged in the petition. But these facts do not preclude the plaintiff's right to recover under the statute, at least as against the sheriff and the sureties on his official bond. While our practice act and rules prescribed by the Supreme Court designate certain pleas by certain names, still, if a plea states a cause of action or a defense, the fact that it may be given a wrong name by the pleader does not nullify the effect of the plea. The courts should, and as a general rule do, look to the substance, and not the form, in determining the merits of a particular written instrument, including pleadings filed in a court; and it has, in substance, so been held by this court in construing the statute referred to. Murray v. Evans, 25 Tex.Civ.App. 331, 60 S.W. 786; Nowotny v. Grona, 44 Tex.Civ.App. 325, 98 S.W 416. In the cases just cited this court held that a proceeding under the statute constituted an ordinary civil suit."

■ By converse reasoning, the statement last quoted is applicable here. Plaintiff's pleading, although labeled a motion, and, obviously following provisions of the execution statute in question, has all the indicia of, and must be properly denominated, an ordinary civil suit. So far as it states facts and seeks relief or remedy beyond the purview of the above quoted Article (3819), the pleading is subject to appropriate pleas in abatement or to the

venue. See Burrage, et ux. v. Hunt Production Co. et al., Tex.Civ.App., 114 S.W. 2d 1228, and authorities there cited. Defendants filed answers on which the cause was tried more than a year later. We think, in view of the lack of formalities required of pleading in Texas, so long as a cause of action is stated, that the irregular features surrounding the commencement of plaintiff's lawsuit cannot now be complained of.

■ We turn briefly to defendants' special exceptions (sustained by the trial court), which deal with the nature of the damages properly recoverable. In the state of the record, we must assume the truth of plaintiff's allegations, which, in the main, are for actual losses and necessary expenses sustained by reason of intentional and wrongful acts of defendant official, such as would not have been suffered but for the initial wrongs. Though many of the cases cited by counsel on the measure of actual damages, state the rule in somewhat different language, yet, both plaintiff and defendants generally agree that the measure of liability for such wrongful acts of a sheriff, or other public official, is determinable by the classic test of proximate cause. By such test, defendants contend that damages, if any, are limited to natural, immediate and probable consequences, unbroken by any new or independent cause, such as were necessitated in this case by the bankruptcy proceedings—it being argued that the latter consequences were remote. The cases of Coleman v. Lytle et al., 49 Tex.Civ.App. 42, 107 S.W. 562, and State v. Hatcher et al., 52 S.W.2d 794, reversed on other grounds, 125 Tex. 84, 81 S.W.2d 499, 98 A.L.R. 1213 are cited. These decisions, however, are predicated on ordinary negligence as the proximate cause of the losses, whereas, we have here an alleged wilful wrong—the intentional commission of an act in violation of plaintiff's rights. While the same rule of liability for proximate consequences of an act or omission is held generally to apply in both instances just above mentioned, the distinction would seem to lie in the application of the rule. We quote from the annotations by the editor, following Isham v. Dow's Estate, 70 Vt. 588, 41 A. 585, 45 L.R.A. p. 87, 67 Am.St. Rep. 691: "Proximate consequences are regarded, in case of mere negligence, as covering only such direct and immediate

597

results as occur without the intervention of any outside or independent agency, while in case of wilful or malicious acts, consequences which might have been reasonably expected or foreseen are deemed to be proximate, though outside and independent agencies do intervene."

In 15 Am.Jur., Damages, Sec. 67, p. 474, the rule is similarly stated: "Proximate consequences, while regarded in case of mere negligence as covering only such direct and immediate results as occur without the intervention of any outside or independent agency, in case of wilful or malicious acts are regarded as those which might have been reasonably expected or foreseen, though outside and independent agencies intervene. In such cases, the wrongdoer is responsible for the direct and proximate consequences of his act, without regard to his intention to produce the particular injury. It is not necessary, in most jurisdictions, that the act should be wanton in order to impose liability for all the injurious consequences. If it is voluntary, and not obligatory, it is enough."

█ The above, in effect, are the principles applied in Jesse French Piano Co. v. Phelps, 47 Tex.Civ.App. 385, 105 S.W. 225; Mathis et al. v. Wherry, Tex.Civ. App., 45 S.W.2d 700; Giraud v. Moore, 86 Tex. 675, 26 S.W. 945, and St. Louis, Southwestern Ry. Co. of Texas v. Alexander, Tex.Civ.App., 141 S.W. 135, 136, where is said: "And, when the tort constitutes a willful wrong, it has been held by high authority that the wrongdoer is responsible for the direct and immediate consequences thereof, whether or not they may be regarded as natural or probable, or whether they might have been contemplated, foreseen, or expected or not." Bearing in mind that, at the time of the first or irregular sale by the sheriff, the Texas Moratorium Law was in existence, and also, the Amendment to the U. S. Bankruptcy Law, Frazier-Lemke Act, 11 U.S.C.A. § 203, had been enacted by Congress, we think the rule of liability, following even a negligent tort, would make issuable as items for recovery, the expenses incident to the bankruptcy proceedings, though not participated in by defendant Sheriff; his liability extending, not only to resultant losses that are direct and immediate, but to such consequential damages as, according to the common experiences of men, are likely to result from such act. Humble Oil & Refining Co. et al. v. Wood,

Tex.Com.App., 292 S.W. 200; Hughes v. City of Austin, 12 Tex.Civ.App. 178, 33 S.W. 607.

█ We conclude, defendants' special exception No. 3 to plaintiff's allegation of damage, i. e., 8 per cent. interest on the amount bid at the last sale ($9,500) was properly sustained, there being no pleading that plaintiff was prevented from receiving such amount in cash at the first sale, by reason of the acts of the Sheriff or his deputy; it being admitted that, between the dates of the two sales, the lands were in the continuous possession of the plaintiff. Furthermore, there is nothing alleged to indicate plaintiff as having been deprived of any advantageous sale of the property, because title thereto was not acquired at the earlier date. Giraud v. Moore, supra. The allegations must set forth actual damages suffered. Gardner v. Bell et al., 14 Tex.Civ.App. 356, 38 S.W. 239; Id., Tex.Civ.App., 38 S.W. 240.

█ Plaintiff's general statement of court costs, $102.45, and service fees, $47.85, was insufficient, in that, same should have been itemized and set out with such certainty and fullness as to apprise defendants of the details thereof; the item of $200, constable's costs and commissions, appears excessive on the face of the petition; the proper claim being limited to amounts, if any, paid the sheriff in August, 1934, for holding the alleged wrongful sale. Likewise, the claim for $2,500, attorney's fees failed in appropriate allegations of reasonableness and necessity; and that plaintiff had paid, or had become obligated to pay, such amount. When properly plead, we think the decisions permit a recovery of attorney's fees in this character of action. Beckham v. Collins, 54 Tex. Civ.App. 241, 117 S.W. 431; Findley et al. v. Mitchell, 50 Tex. 143; Anderson v. Larremore, 1 White & W.Civ.Cas.Ct.App. Sec. 948. The pleadings were sufficient as a basis for exemplary damages against defendant Randerson; 38 Tex.Jur., Sheriffs and Constables, Sec. 55a, p. 495; the liability of appellee Surety Company being confined to actual losses; Faroux et al. v. Cornwell et ux., 40 Tex.Civ.App. 529, 90 S.W. 537. In effect, subject to the above discussion of special exceptions and the exclusion of plaintiff's claim of interest for alleged detention of money under exception No. 3, we conclude plaintiff's losses and damages, under the allegations made, are recoverable items when properly prov-

598

en upon another trial, if determined by court or jury to lie within the range of direct and proximate consequences. All other counter propositions of appellees, not directly discussed, have been considered and are overruled.

Reversed and remanded for a re-trial in accord herewith.