## No. 8764.

### SAMUEL L. BOYD vs. B. S. LABRANCHE, SHERIFF, ET AL.

In neither suspensive nor devolutive appeals is citation necessary, when the appeal is taken by motion in open court at the same term when the judgment is rendered.

Judgments of courts, other than those of New Orleans, take effect only from the last day of the term at which they were rendered. Whatever may be ·their actual date, their legal date is the last day of the term, and therefore a party cast has ten days from the adjournment of the court in which to file his bond for a suspensive appeal.

The validity of attachment process depends upon the state of facts existing at the time it was obtained. An attaching creditor may mistake his debtor's intentions, or those intentions may have been correctly divined on one day, and have been changed on the next by the fitful debtor. If the attaching creditor had good reason to believe that his debtor was about to dispose of his property to defraud his creditors and attaches on that ground, and his process is properly served, it will not be invalidated because, in fact, the debtor afterwards absconded. Another creditor, afterwards attaching on the ground that the debtor had left the State permanently, will not take precedence of the first attachment.

APPEAL from the Twenty-sixth District Court, Parish of St. Charles. *Hahn*, J.

*L. De Poorter* for Plaintiff and Appellant.

*Chas. A Baquié* and *E. T. Florance* for Defendants and Appellees.

### ON MOTION TO DISMISS.

The opinion of the Court was delivered by

MANNING, J. The motion is for dismissal because the defendants have never been cited.

The appeal was taken by motion in open court, made and granted the day after the judgment was rendered, and therefore citation was not necessary.

We might stop here, since that is the sole ground stated in the motion, but that the meaning was stated at bar to be that a suspensive appeal bond must be perfected and presented during the same term the motion for that kind of appeal is made.

This is a novel proposition. The Code of Practice gives no countenance to it, nor does any decision of this Court.

The judgment was rendered Aug. 2, 1882, in the court for St. Charles Parish. That term of the court ended August 25th. The judgment there-

fore did not take effect till this last date. Code Prac. Art. 555. Legally the date of the judgment is August 25th, 1882. The appellant had ten days thereafter in which to file his bond. He filed it on that day.

The motion is refused.

### ON THE MERITS.

The contest is between-creditors' for the proceeds of a sale of their debtor's property insufficient to pay both. It is in the form of an injunction by one of them to prevent the sheriff from paying to the other those proceeds, the rival claimant being made co-defendant with the sheriff.

Isidore Jacob is the debtor, and was a shopkeeper in St. Charles Parish. He went to the office of Adler & Levy, the defendants, in New Orleans, on January 13, 1882, and said to their clerk that he would go away if he could sell his stock. He would take $1000 cash for it. He promised to return to the office that evening, and said he should return to St. Charles in a few days. He did not come back to the office, and on the following day Adler & Levy sued out a writ of attachment in St. Charles, on the allegation that Jacob was about to dispose of his property with the intent to defraud his creditors. The process was served at his domicile, he being absent.

Jacob absconded. He did not return to St. Charles. The sheriff of that parish met him on the Jackson Railroad train in the afternoon of the 14th, and Jacob told him he was en route to St. Louis. He was afterwards heard of at New York, and later abroad. On Feb. 10th Adler & Levy filed a supplemental petition, alleging that Jacob had then left the State permanently, and prayed the appointment of a curator *ad hoc*, and citing numerous parties as garnishees under proper averments. No additional or supplemental attachment of the stock of goods was prayed, no bond given. The supplemental attachment therein prayed was against the garnishees.

Meanwhile Boyd, the plaintiff, had taken out an attachment on January 31st, alleging that Jacob had left the State permanently, and his process was served by posting it on the courtroom door, as well as served on a curator appointed at his instance. The stock of goods, already in the hands of the sheriff under Adler & Levy's attachment, was seized under Boyd's writ on the day it issued.

Each party had judgment for his claim—Boyd for $2,010 and the other for $4,682—and the property sold for $2,895.

Adler & Levy contend that Boyd is estopped from disputing the regularity of their proceedings because he claims in this suit the proceeds of sale of the attached property, made at their instance. Boyd's

attachment was levied prior to the sale, and the proceeds were therefore subject to his writ as well, each in the order of time.

On the other hand, Boyd insists that Adler & Levy's proceedings are altogether null because the fact, as demonstrated by his subsequent conduct, was that Jacob had left the State permanently when their attachment was obtained, and therefore the service at domicile was ineffective, and as their process was not posted on the courtroom door, there was not sufficient service to support the attachment.

The validity of attachment process depends upon the conditions existing at the time it is sued out, and the circumstances as they give color to apprehensions or beliefs reasonably induced by a debtor's conduct at the time. Debtors who are about to attempt to evade their creditors generally adopt sinuous methods. They try to deceive those they are plotting to defraud, so that a creditor might well mistake his debtor's real intentions, and besides, those intentions might have been correctly divined on one day, and have been changed on the next by the fitful debtor, ever on the alert for new devices with which to mislead.

Adler & Levy had good reason to believe that Jacob was about to dispose of his property to defraud his creditors. He told their clerk in their office that he wanted to sell his stock, and would sell for an insignificant price in order to go away. He promised to call in the afternoon and did not. He had not returned to St. Charles the next day, and presumably was endeavoring to do what he said he wanted to do. Promptness of action was the one thing needful. They were not required to wait until events had shewn what Jacob really intended to do. They acted on the state of facts as they existed at that moment, and cannot lose the advantage of their acting because their wily debtor had the secret intention to leave the State permanently. He had not gotten out of it on the 14th, when their process was served. The sheriff saw him late on that day.

The singular feature in his conduct is that he should have taken the pains to go to Adler & Levy's office, and have there told their clerk what he wanted to do. We do not see or hear any suggestion that this was a sly way of giving a hint to those whom he would like to prefer. Whatever may have been his purpose, his conduct gave just cause for alarm to them, and they attached on the instant. Their supplemental petition does not pray a new attachment. They rested on the original process of the 14th, and had deposited money in the court as a substitute to a bond. The main object of the supplemental petition seems to have been to obtain garnishment process, and the appointment of a curator *ad hoc*, contradictorily with whom all the subsequent proceedings were conducted.

We think the proceedings of the first attaching creditors are regu-- lar, and their claim absorbs the fund.    But we cannot permit the other creditor to be mulcted in twenty per cent. damages, and one hundred dollars attorney's fee, for testing the legality of the process which stood in the way of his claim.    Therefore

It is ordered and decreed that the judgment of the lower court dissolving the injunction is affirmed, and so much thereof as awards damages and attorney's fee is reversed, and the judgment for interest on the sum injoined is also affirmed, the defendants and appellees to pay the costs of appeal.