### JESSE FRENCH PIANO & ORGAN COMPANY v. F. W. PHELPS.

Decided November 6, 1907.

**1.—Pleading—Trespass—Description and Value.**

In an action for trespass resulting in plaintiff's loss of numerous articles of personal property it is not necessary that each specific article be enumerated and the particular value thereof stated.

**2.—Trespass—Loss of Goods—Proximate Result.**

One who unlawfully broke into the locked house of another containing his household goods, for the purpose of taking therefrom a piano claimed by him, and left the door unlocked and the property therein a prey to trespass and theft by others was liable for loss of articles taken therefrom by others, as being a proximate result of his own wrong.

**3.—Evidence—Communication by Telephone.**

It was admissible to prove for the purpose of showing authority from defendant, for its agent to commit a trespass, a communication by telephone from defendant's general manager to its local agent directing him to do the act though this involved a statement of information received by the manager from a third party on which he acted in giving such direction.

**4.—Trespass—Authority of Agent.**

Defendant corporation was liable for a trespass committed by its agent by order of its general manager (taking a piano from plaintiff's house), though done by mistake under a claim which had no foundation, plaintiff having had no dealings with defendant in relation to such property nor defendant any right thereto.

**5.—Trespass—Evidence.**

It was admissible to prove by whom the trespass ordered by defendant was performed, and the condition in which the premises were left by the trespassers and the loss of property by reason thereof though not taken by the original trespassers.

**6.—Same—Authority of Agent.**

Evidence considered and held to show that an act of trespass by agents of a corporation was authorized by the corporate representatives and the corporation liable therefor, though, by mistake, they acted in a matter in which the corporation had no interest.

Appeal from the County Court of Dallas County. Tried below before Hon. Hiram F. Lively.

*U. F. Short,* for appellant.—The value of each article should have been stated, that appellant might be apprised of the damage claimed

for its loss. The aggregate value of all the articles was not sufficient. Forbes v. Moore, 32 Texas, 196; Brown v. Adams, 3 Texas App. Civ., 462.

The wrongful entry into the appellee's premises by the servants and agents of appellant, and leaving the doors and other openings without fastenings and insecure, would not render it liable for the action of other trespassers wrongfully entering said premises and taking therefrom the property of appellee. Crain v. Petrie, 41 Am. Dec., 765.

A master is not liable for the servant's tort unless done in or about the duties assigned him, or in the accomplishment of objects within the line of his duties. Ingram v. Linn, 4 Texas, 266-270; O'Neill v. Davis, 1 Texas App. Civ., 184; Palos Coal & Coke Co. v. Benson, 39 So. Rep., 727; Burnett v. Oeschner, 82 Texas, 516; International, etc., Ry. v. Cooper, 88 Texas, 609.

Where the servant for his own purposes does a wrong without the direction or authority of the master, and not for the purpose of executing his orders or doing his work, the master is not liable. Keating v. Michigan C. R. Co., 37 Am. St. Rep., 328; Cofield v. McCabe, 59 N. W., 1005; Turley v. Boston M. R. Co., 47 Atl., 261; Marian v. Chicago, R. I. & P. R. Co., 42 Am. Rep., 36, note; Golden v. Newbrand, 35 Am. Rep., 257; Byrne v. Kansas City, Ft. S. & M. R. Co., 61 Fed., 605; Reaume v. Newcomb, 82 N. W., 806; Shearman & Redfield Negligence, 4th ed., p. 148; Stone v. Hills, 29 Am. Rep., 635; Johanson v. Pioneer Fuel Co., 75 N. W., 719; Guille v. Campbell, 86 Am. St. Rep., 705; Winkler v. Fisher, 70 N. W., 477; Clancy v. Barker, 103 N. W., 446; Bowen v. Ill. Cent. R. Co., 136 Fed., 306.

*W. M. Holland,* for appellee.—In actions of tort the question as to what is the natural and proximate cause of a loss or immediate consequence of a given act is one of fact for determination of the jury. Gulf, C. & S. F. Ry. v. Hayter, 93 Texas, 242; Milwaukee, etc., Ry. v. Kellogg, 94 U. S., 476; 8 Cyc., 581.

The unlawful breaking by appellant into appellee's dwelling, and the illegal removal of appellee's piano therefrom, and leaving the house open and insecure, would render appellant liable for all actual damages caused appellee by reason thereof. 4 Sutherland on Damages, 3d ed., 1101.

RICE, ASSOCIATE JUSTICE.—This suit was brought by appellee against appellant to recover damages for trespass alleged to have been committed by the agents, servants and employes of appellant upon the property of appellee. The petition charges that on the 10th of December, 1904, appellee was in possession of a dwelling house in the town of Murphysboro, Illinois, and that on said date appellant broke into said house and took therefrom a piano; that it left the house open and insecure, in consequence of which many articles of household and kitchen furniture, wearing apparel and valuable books had been taken, which belonged to appellee, and which he had not been able to recover, although diligent search had been made therefor, claiming actual damages in the sum of $306.75, and exemplary damages in the sum of $600.

There was a verdict and judgment for appellee in the sum of $301.75, from which appellant prosecutes this appeal.

It appears from the evidence that appellee moved from Murphysboro, Ill., about the 28th of November, 1904, taking his family to the Indian Territory, where he left them with his father, going to seek work elsewhere. Upon leaving home he securely locked and fastened his house. On the 10th of December thereafter it appears that the house was broken open and a piano belonging to appellee taken therefrom; that the party breaking the house entered the same through a window in the kitchen, and with the aid of other persons, after breaking the fastenings on the front door, removed the piano therefrom; that upon leaving the house he pulled the door to without locking or fastening it, and likewise left the window through which he had entered unfastened. The evidence further shows that the party who broke the house and removed the piano was one Carlyle, then the local agent of appellant. It further appears that this piano was removed by the instruction of the president of said company, and also at the instance of one Robinson, its general manager for the State of Illinois. Appellee having heard that his house had been broken and the piano taken therefrom, returned to his home, going by way of St. Louis, where he stopped over and saw the president of the company at its office in said city, at which time he found the piano in appellant's warehouse, and had a conversation with the president in which he admitted that, through some mistake in a telephone communication from Baldwin & Co., another piano firm, but in no way connected with appellant, he had directed his said agent, Carlyle, to take the piano and keep it. This piano was afterwards shipped to appellant's St. Louis house, where it was overhauled and put in good condition, but was identified by appellee upon this visit. After this interview with the president appellee went to his home at Murphysboro, where he found that his house had been broken and left open, and missed the property described in his petition and made search therefor, but was unable to find any of the missing articles. In April thereafter his piano was shipped to him at Sherman, Texas, by Baldwin & Company, to whom the same had been sent by appellant.

Appellant's first, second and third assignments of error are addressed to the alleged insufficiency of the petition, upon the ground that some of the articles lost were insufficiently described, and that the petition did not give the separate value of said articles, but only their aggregate value.

The third paragraph of the petition alleges that said cooking vessels consisted of granite-ware articles as follows: one dishpan, one tea-kettle, one teapot, and the other articles were one axe and one hatchet of the aggregate value of $6. The fourth paragraph of the petition alleges the loss of the wearing apparel of plaintiff's wife, naming the articles, but only gave their aggregate value. The seventh paragraph alleged the loss of certain miscellaneous books, consisting of 35 volumes of household library books, of the value of $30, and alleged that the plaintiff is unable to enumerate same and to give a more particular description thereof.

We think in this class of cases that the petition was sufficiently

definite in its description of the property lost, and that it was not necessary to give the value of each article separately, but that the value might be properly stated in the aggregate. In Schneider Davis v. Ferguson, 77 Texas, 575, Judge Gaines says: "It may frequently occur that a plaintiff whose goods have been unlawfully seized may be unable to specifically describe each article so taken. Under such circumstances it would be unreasonable to require a particular description. Such a rule in such cases would result in a practical denial of justice."

Mr. Townes on Pleading, p. 282, says: "Quantity is not ordinarily required to be stated with exactness," and so with reference to "allegations of value. . . . There was an old rule that if suit was brought for a number of separate articles or things, and only an aggregate value was given, and the proof showed a different number, there could be no apportionment of the alleged value and pro rata recovery, but this seems to be no longer the case."

In the 21st Encyclopedia of Pleading & Practice, p. 821, treating of this subject, it is said: "Where the subject matter of the trespass is personal property, its quantity, quality and value, or price, should be stated. However, an allegation as to quantity and quality in general terms is sufficient; and where many articles are removed or injured it is sufficient to state the aggregate value of all of them."

In Donaghe v. Roudeboush, 4 Munf. (Va.), 251, in declaring for the taking away of a quantity of poultry, consisting of turkeys, geese, ducks and hens, it was held that it was unnecessary to state how many there were of each description, the collective value of the whole being stated.

Even in criminal pleading, where greater accuracy is demanded than in civil, it is not required to state the separate value of each article of property taken or stolen, but if the items are given the aggregate value of all may be alleged. Thompson v. State, 43 Texas, 268; Ware v. State, 2 Texas Crim. App., 547. Believing there is no merit in these assignments, they are overruled.

By its fourth assignment of error appellant complains that the court erred in overruling its exception to the petition, because the injury complained of is not the direct and proximate cause of the loss of the goods charged to have been taken, in that it was not stated that the goods, other than the piano, were taken by appellant or its agent, but that it appeared that the same were lost to the plaintiff as a result of said trespass and leaving the house unfastened. By its thirteenth assignment of error appellant complains of the action of the court in refusing to give its special charge to the effect that, though the jury should believe that the defendant, by its employes, did enter the premises of appellee and take therefrom his piano, and left the house open or insecurely fastened, and that afterwards other persons entered said premises and removed therefrom goods belonging to appellee, that he would not be entitled to recover therefor.

These assignments raise the question as to appellant's liability for such articles or goods as were lost from the house after the piano was taken therefrom, and which appellant claims was not the direct and proximate result of the breaking of the house and leaving the same unfastened. We can not agree with appellant in this contention. We

think that if appellant, through its agents, did unlawfully break and enter the house of appellee, and take therefrom his piano, leaving the house unfastened, that it would be liable for any property or goods shown to have been taken or abstracted therefrom, notwithstanding the fact that the proof did not show who took the same. Appellants having unlawfully broken and entered the house, leaving same open and in such condition as to be an easy subject for trespass or theft by others, and appellee's goods and wares are afterwards taken therefrom by reason of such unlawful act of appellant or its agents, we believe that the appellant would be liable therefor. It would certainly be the natural, reasonable and probable consequences of such an act, and though appellee is unable to show that appellant in fact took any of the other articles lost, still, having left the house unfastened and subject to the depredation of others, it can not be heard to say that it is not responsible to appellee for the alleged loss thus occasioned.

Appellant's ninth assignment of error complains of the action of the court in permitting plaintiff to show by Carlyle that he received a phone message from Robinson, the general manager of the company, stating that Mr. Glenn, a music dealer of Murphysboro, had called him up by phone and advised them that they had better look after their piano in the hands of appellee. This testimony does not, as appellant contends, show that Glenn ordered the seizure of the piano, but it merely shows that Robinson, the general manager of the company, received information through Glenn which caused him to give the instruction to Carlyle, appellant's local agent, to get the piano. There being no error in the admission of this testimony, this assignment is overruled.

Appellant's eleventh and fourteenth assignments of error contend that the court erred in refusing to give certain special instructions asked by it, one of which is as follows: "That although the jury should find and believe from the testimony that W. M. Robinson was in defendant's service as manager of its salesmen, yet if they further found that appellant never had any transaction with appellee, and had no debt against him or any lien upon his property, but that said Robinson, acting under a telephone message which he received from one Glenn, who was not shown to have been in defendant's employ, directed one Carlyle to take and remove said piano, and said Carlyle did enter upon the plaintiff's premises and take and remove the same, and that he had no right to do so, yet the jury can not find a verdict against the defendant for such taking, because, under the circumstances, the taking of said property was not in the line of duty which either the said Carlyle or the said Robinson were hired to perform for the defendant."

The other charge which was refused practically raises the same question. It will be seen, therefore, that appellant's contention is that if it had no dealings with appellee concerning the piano in question, no debt or lien upon it, and that its act of removal was unlawful, then this would relieve it from liability on account of the acts of its agent in removing said piano, notwithstanding the very act complained of was done through the express command of Robinson, its general manager.

We think this position is untenable, because Carlyle is shown to be the local agent of the company, Robinson its general manager, and that Carlyle removed the piano under the direction of Robinson, each acting within the apparent scope of their authority. Appellant was dealing in pianos, and when, through its general manager, it directs one of its agents to take from appellee the piano in question, and the agent does so, and injury results by reason of its unlawful taking, it certainly can not be urged that appellant is not responsible therefor, notwithstanding it afterwards appeared that the piano did not in fact belong to appellant, and that it had had no dealings with appellee about the same, and that it had no authority to remove the same. It seems to us that it was the duty of appellant and its officers, before directing its agents to enter appellee's house and take therefrom his piano, to exercise ordinary care to ascertain whether the piano belonged to appellant, or whether they had the right or authority to enter. said premises; and, failing so to do, it seems fair that it should be held responsible for the wrong, if any, committed by its agents on account of its negligence.

The court did not err, as claimed by appellant in its fifth assignment of error, in permitting witnesses to testify that the piano was removed from the house of appellee by a white man and some negroes; nor did it err in allowing appellee to show the condition of his house, as found by him on his return home in February, 1905, nor that books and other articles were missing therefrom. We therefore overrule the fifth, sixth and seventh assignments of error, raising these questions.

Appellant urges under its fifteenth assignment of error that the court erred in its general charge in directing the jury, if they found and believed from the evidence that the defendant, acting by and through its duly authorized agent, did, by use of force, break and enter the plaintiff's house without authority of law, and that if defendant, by its authorized agent, directed such entry to be made, then defendant would be liable, and they would return their verdict for the plaintiff for such damages, if any, as he sustained by reason of removing the piano from said residence. Appellant claims that there was no evidence showing or tending to show that the defendant ever authorized or directed the taking of the piano from appellee's possession; and further claims it was not shown that the taking of the piano was in the line of the duty of either, Robinson, the general manager of the company, or Carlyle, the local agent of the company, and that said acts of Robinson and Carlyle were their individual acts, for which they alone could be held individually liable.

The record discloses that O. A. Field was the president of appellant company, and had general charge and supervision of its entire business, with headquarters at St. Louis, and that W. M. Robinson was general manager of said company for the State of Illinois, and that Carlyle was its local agent at Murphysboro, Ill. The record further shows that the piano was removed under the order and direction of Field, the president; likewise by the direction of W. M. Robinson, its general manager, and Carlyle, its local agent, admitted that he removed the piano. The piano was afterwards shipped by the company's agents to its general office in St. Louis, and there held for several months by

it, and finally shipped by it to another piano company, who requested them to do so, claiming that the appellee owed them therefor, and had failed to pay them. Appellee discovered and identified his piano in appellant's warehouse in St. Louis. It is true that ·the president stated that, through some mistake or misapprehension of a telephone message, he was led to believe that appellee had left the piano in a vacant house; but it does not affirmatively appear that Field, its president, thought or believed that he was not acting in behalf of and for the company at the time the piano was taken. Under the circumstances detailed in the record, we think that there was sufficient evidence to justify the charge of the court and the verdict of the jury, and that this assignment is therefore not well taken.

We do not believe that there is error shown in any of the other assignments.

Believing that substantial justice has been reached, and no error shown in the action of the trial court, the judgment in this case is therefore affirmed.

*Affirmed.*