tion further alleges that under the ordinance of said city making the assessment appellee is claiming and attempting to fix a lien upon plaintiff's property which it intends to foreclose. The concluding allegations and prayer of the petition are as follows:

"Plaintiff alleges that by the publication of the ordinances thereinbefore described and the levying of said assessment with the purpose and the intent by said board of aldermen to create and fix a lien upon plaintiff's property, under the terms and provisions of article 1011 of chapter 11, title 22, Revised Statutes of Texas, a cloud has been cast upon the title of plaintiff's land against which such assessment was made. Plaintiff alleges and would show to the court that the pretended assessment, even if legally made, is an excessive assessment, that his property has not been enhanced in its value by reason of the proposed improvement and will not be enhanced in its value by reason of such proposed improvement after the same has been made, that plaintiff is the owner and is in possession of said land and premises, that said assessment is against the following described property and is intended and claimed to be a lien described as follows, to wit: Lot No. 3, in block No. 23, assessed at $162.90. One-half interest in lot 10, block 13, assessed at $171.25, and his one-half interest is $85.63½. Lot No. 2 in block ——, assessed at .$134.03, making in the aggregate a total of $382.64, and asserting a lien against said property. Wherefore plaintiff prays the court, citation having theretofore issued to the defendant named herein, that upon a hearing hereof plaintiff have judgment against said defendant declaring said assessment to be null and void and removing the said cloud from his title, and that he be quieted in his title to said land, for cost of suit, and for general and special relief in law and equity as he may be entitled to."

Upon exceptions to the petition presented by defendant the trial court dismissed plaintiff's suit upon the ground that, the amount in controversy being less than $500, the district court was without jurisdiction to hear and determine the suit.

From the foregoing statement of the allegations of the petition it is clear that one of the purposes of the suit is to clear plaintiff's title to the property described in the petition from the cloud cast thereon by the claim and threatened enforcement by defendant of the lien given by the statute to secure the payment of the assessment, and, if the district court has jurisdiction of a suit to remove such cloud, the fact that the amount of the assessment against which plaintiff seeks relief is less than $500 does not defeat its jurisdiction. The case of Bank v. Knight, 126 S. W. 893, cited by appellee, was a suit to enjoin the collection of a tax of less than $500, and the court in holding that the county court had jurisdiction of the suit construed the petition as not seeking to remove cloud from the title to plaintiff's land; the allegations as to cloud upon the title being only incidentally made, and there being no specific prayer that the cloud cast by the alleged illegal tax levy be removed. The fair inference from this decision is that, if the petition had sought to remove the cloud from the title

to the land, the suit should have been brought in the district court. The provisions of the statute under which the assessment was made fixes a lien upon plaintiff's land to secure the payment of the assessment, and the passage and publication of the ordinance making the assessment and the assertion by defendant of a lien upon plaintiff's property by reason of said assessment cast a cloud upon plaintiff's title, and if the district court has jurisdiction of a suit to remove such cloud plaintiff's suit should not have been dismissed.

Section 8 of article 5 of the Constitution of this state confers upon the district court jurisdiction of "suits for trial of title to land and for the enforcement of liens thereon." The term "suits for the trial of title to land" has been construed to include all suits of whatever form in which the title to land is directly involved, and it seems to us that when the purpose of the suit is to determine the question of the validity of a lien upon land, as the judgment rendered in such suit would necessarily affect the title to the land, the title is directly involved in the suit.

In the case of Dauenhauer v. Devine, 51 Tex. 480, 32 Am. Rep. 627, which was a suit by a lot owner to prevent the owner of an adjoining lot from making an opening in a party wall, and in which no amount of damages was alleged, our Supreme Court says:

"In regard to the question of the jurisdiction of the district court, our opinion is that the nature of the suit, the injury complained of, and the relief sought were such as to give the district court jurisdiction, independent of the amount of injury alleged. The title and possession of land were so far involved as to make the case one for the district court."

If a suit to prevent injury to a party wall is a suit involving the title to land, we think it must be held that a suit to prevent an illegal attempt to fix a lien upon land, or to remove the cloud upon the title caused by such attempt, is a suit involving the title to land.

Our conclusion is that the trial court erred in holding that it did not have jurisdiction of the cause of action and in dismissing the suit on that ground. It follows from this conclusion that the judgment should be reversed and the cause remanded, and it has been so ordered.

Reversed and remanded.

---

BRADY–NEELY GROCER CO. v. DE FOE et al. (No. 642.)

(Court of Civil Appeals of Texas. Amarillo. July 4, 1914. Rehearing Denied Oct. 10, 1914.)

1. APPEAL AND ERROR (§ 1040*)—HARMLESS ERROR—RULINGS ON PLEADINGS.

In an action by a firm for wrongful attachment, an assignment of error complaining of the overruling of an exception to allegations as to damages to the good reputation and credit of one of the partners, on the ground that such damages were recoverable by him alone, and not by

the firm partnership, was without merit, where no exemplary damages were recovered, as such allegations were intended as a basis for exemplary damages.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

2. ATTACHMENT (§ 373*)—WRONGFUL ATTACHMENT—ACTIONS—PETITION.

In an action for wrongful attachment of a stock of merchandise, the petition alleged that plaintiffs had no later inventory than one taken about two weeks before the attachment, and had not been able to obtain one since the attachment; that no other inventory was ever made by any one; that in the suit in which the attachment was issued the property was not described by items, nor in the return of the writ of attachment nor the order of sale; that, if the officers made an inventory, it was incorrect and incomplete, and made after a great deal of the property attached had been wrongfully removed from the store; and that it was made by incompetent persons under defendant's direction or by interested persons not acquainted with the value of the goods. It also showed that part of the goods had been lost by a burglary, and there was attached thereto an itemized statement of the goods in the store two weeks before the attachment, alleged to be correct, except that certain goods had been added and sold. It appeared that defendant made an inventory, the constable not being present, but never filed it in court. Held, that an exception for failure to show the articles removed from the store and their value, or those remaining in the store and their value, was properly overruled, as one party is never required to allege facts peculiarly within the knowledge of the adverse party, and the fact of the burglary relieved plaintiffs from making more specific allegations.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1356–1362, 1395–1397; Dec. Dig. § 373.*]

3. ATTACHMENT (§ 374*)—WRONGFUL ATTACHMENT—ACTIONS—PETITION.

In an action for wrongfully suing out an attachment on the ground that plaintiffs were about to dispose of their property to defraud creditors, allegations in the petition that plaintiffs were indebted to defendant for part of the purchase price of the stock of goods attached to the amount of $1,400, that they had entered into an agreement that such sum should not be paid until a certain date, that they were to execute notes and a mortgage to secure them, covering furniture, fixtures, tools, and property having a total value of approximately $1,900, and convey certain lands, to be credited at an agreed price in part payment for the goods, and that these agreements constituted one entire contract, were not subject to an objection that they were immaterial, irrelevant, and prejudicial, as they were proper to show the existence of malice and to rebut the grounds of attachment set up.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1363–1372, 1392; Dec. Dig. § 374.*]

4. SET-OFF AND COUNTERCLAIM (§ 29*) — AVAILABILITY IN ACTION FOR UNLIQUIDATED DAMAGES.

Under Rev. St. 1911, art. 1330, providing that the preceding article relative to set-offs in actions for unliquidated or uncertain damages founded on a tort or breach of covenant shall not prevent defendant from pleading in set-off any counterclaim founded on a cause of action arising out of, incident to, or connected with plaintiff's cause of action, in an action for wrongful attachment of a stock of goods, a judgment in favor of the attaching creditor in the attachment suit for the purchase price of the goods was a proper set-off.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 49–51; Dec. Dig. § 29.*]

5. JUDGMENT (§ 883*) — SET-OFF OF JUDGMENTS—ALLEGING CREDITS IN DEFENDANT'S FAVOR.

In an action for wrongful attachment of a stock of goods, plaintiffs had a right to plead a judgment recovered by defendant in the attachment suit for the purchase price of the goods, and ask that it be credited against their claim; this not being a plea of counterclaim and set-off, but merely an allegation of facts entitling defendant to a credit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1669–1688; Dec. Dig. § 883.*]

6. APPEAL AND ERROR (§ 1040*)—HARMLESS ERROR—RULING ON DEMURRER.

In an action for wrongful attachment, any error in overruling exceptions to allegations of the petition that the judgment recovered in the attachment suit was rendered on a debt not due was cured by the court's instruction that the former judgment was res judicata of that issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

7. ATTACHMENT (§ 21*)—GROUNDS—NECESSITY OF EXISTENCE WHEN ATTACHMENT IS ISSUED.

An attachment must stand or fall according to the facts existing at the date of its issuance, and cannot be cured by a subsequent event.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 54–60; Dec. Dig. § 21.*]

8. ATTACHMENT (§ 380*)—WRONGFUL ATTACHMENT — INSTRUCTIONS — CONFORMITY TO PLEADING AND EVIDENCE.

Where, in an action for attaching a stock of merchandise, plaintiffs alleged that defendant, its agents and officers, used the writ in an oppressive and harsh manner, and that it could have collected its debt without closing plaintiffs' store, and there was evidence that the debt amounted to $1,400, that goods to the value of $3,200 were taken under the writ, and that after a burglary, and after the sale of perishable goods, the goods remaining were worth $2,685 and were actually sold for $1,755, the issue as to an excessive levy was properly submitted to the jury.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1373–1375; Dec. Dig. § 380.*]

9. APPEAL AND ERROR (§ 216*)—RESERVATION OF GROUNDS OF REVIEW—INSTRUCTIONS—NECESSITY OF REQUESTING.

In an action for wrongful attachment, any error in failing to charge that plaintiffs could not recover if either of the grounds of attachment set out in the affidavit were true was waived by failing to request a special charge.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. § 627.]

10. ATTACHMENT (§ 374*)—WRONGFUL ATTACHMENT—ATTACHMENT WRONGFUL AS TO ONE OF THE ATTACHMENT DEBTORS.

In an action for wrongfully attaching a stock of goods owned by a firm, where there was sufficient evidence to sustain a finding that the managing partner, who was the only partner who at that time had invested any money in the business, was not trying to defraud the firm's creditors by holding a discount sale, a verdict for plaintiffs was supported by the evidence, though the other partner did not testify as to his intention in making the sale, since one partner could not make an unlawful or fraudulent disposition of the firm assets without the con-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

sent of the other, and, if the attachment was wrongful as to the one partner, the verdict and judgment should be sustained.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1363–1372, 1392; Dec. Dig. § 374.*]

11. ATTACHMENT (§ 381*)—WRONGFUL ATTACHMENT — VERDICT — FORM AND SUFFICIENCY.

In an action for wrongful attachment, in which plaintiffs pleaded a judgment recovered by defendant in the action in which the attachment was issued, and asked that it be credited against their claim, a verdict for plaintiffs "in the sum of $930, with interest, * * * as actual damages over and above the principal and interest of the judgment," was a sufficient finding to warrant the court in decreeing the cancelation of the former judgment in defendant's favor.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. § 1401; Dec. Dig. § 381.*]

12. ATTACHMENT (§ 374*) — WRONGFUL ATTACHMENT—ADMISSIBILITY OF EVIDENCE.

In an action for wrongful attachment of a stock of merchandise purchased by plaintiffs from defendant, evidence as to the particulars of the trade between the parties, and as to the agreement showing how payments had been made, and in what way the balance due was to have been paid, was properly admitted.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1363–1372, 1392; Dec. Dig. § 374.*]

13. ATTACHMENT (§ 374*) — WRONGFUL ATTACHMENT—ADMISSIBILITY OF EVIDENCE.

In an action for wrongfully attaching a stock of merchandise, where defendant had insisted that the act of one of the plaintiffs in taking money from a cash drawer in their store immediately before the attachment tended to show an intent to dispose of the goods for the purpose of defrauding creditors, he was properly permitted to testify that he used the money to pay bills owing by plaintiffs when the attachment was levied.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1363–1372, 1392; Dec. Dig. § 374.*]

Appeal from District Court, Potter County; Jas. N. Browning, Judge.

Action by Louis De Foe and another against the Brady-Neely Grocer Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Madden, Trulove & Kimbrough and W. E. Gee, of Amarillo, for appellant. Synnott & Underwood, of Amarillo, for appellees.

HALL, J. This action was instituted by appellees, De Foe and R. C. Stubbins, partners, doing business under the firm name of De Foe & Stubbins, to recover from appellant both actual and exemplary damages for the wrongful suing out and levying of a writ of attachment by appellant upon certain goods belonging to appellees. A trial before a jury in the district court of Potter county resulted in a verdict and judgment for appellees for actual damages in the sum of $930, with 6 per cent. interest from February 1, 1910, over and above the principal and interest of a judgment which had been previously rendered in the same court and in favor of the appellant against the appellees; the former judgment being based upon an account for goods sold by appellant to appellees.

[1] The petition alleged that Louis De Foe had established a good reputation and credit as a merchant, and that such reputation, credit, and standing constituted the property of the partnership of the value of $15,000. This allegation was excepted to upon the ground that the alleged damage to the credit and reputation of De Foe, if any, was recoverable by him alone and not by the partnership. This action of the court is questioned by the first, second, and sixth assignments. The allegations were intended as a basis for exemplary damages, and, since no such damages were recovered, the assignments are without merit.

[2] The petition alleged that they had no later inventory than one taken about two weeks before the attachment, and that they had not been able to obtain one since the attachment; that no other inventory had ever been made by any one; that the property was not described by items in the previous suit between the parties nor in the return of the writ of attachment nor of the order of sale; that, if the officers made an inventory, it is incorrect and incomplete and did not contain all of the property, and only stated its probable value at the time, and, if made at all, was made after a great deal of the property taken by defendant from the plaintiffs under attachment had been wrongfully removed from the store before the taking of the above inventory; that it was made by incompetent persons under the direction of the defendant or by interested persons not acquainted with the value of the same and was incomplete and incorrect. The objection was because the allegation failed to show the articles removed from the store and their value, or the articles remaining in the store and their value. There was attached to the plaintiffs' petition an itemized statement of all the goods in the store two weeks before the attachment, and it is alleged that such statement is correct, except that certain goods had been added and sold. It seems that an inventory was made by appellants soon after the attachment; the constable not being present when it was made. It had never been filed in court, but was retained by appellants until the trial. We think the court was correct in overruling this exception. One party is never required to allege facts peculiarly within the knowledge of the opposite party. The petition showed that the house had been left open and a burglary committed in the meantime, which relieved them from making more specific allegations. Jesse French Piano Co. v. Phelps, 47 Tex. Civ. App. 385, 105 S. W. 225; Schneider v. Ferguson, 77 Tex. 572, 14 S. W. 154.

[3] Appellee further alleged that about the 20th day of January, 1910, appellees were in-

debted to appellants for part of the purchase price for the stock of goods to the amount of $1,400; that they entered into a contract that such sum should not be paid until after the 1st of February, 1910; that plaintiffs were to execute notes, due in 30, 60, and 90 days, and a mortgage to secure the notes covering furniture, fixtures, tools, and property belonging to appellees to the total value of $1,932.25; that De Foe and his wife should execute a deed to a certain tract of land in New Mexico, at an agreed price of $1,300, which should be credited at that price in part payment for said goods; and that these agreements constituted one entire contract. The objection urged to this allegation was that it was immaterial, irrelevant, and prejudicial to defendant. These facts were properly alleged to show the existence of malice in levying the attachment and to rebut the grounds of attachment set up in the affidavit.

[4, 5] It is urged that the court erred in overruling the exception of defendant to that portion of the petition wherein appellees set up the existence of the judgment previously obtained against them by appellants. After setting up the judgment, appellees allege their willingness to allow the amount due on said judgment to be deducted from the amount which might be found to be due plaintiffs in this action, and ask that said judgment be canceled and a decree rendered herein for the difference after deducting same from the amount rightfully due plaintiffs from said judgment. The first proposition under this assignment is that an unliquidated claim for damages cannot be set off against a judgment previously rendered. R. S. 1911, art. 1330, permits a set-off under such circumstances, if the counterclaim is founded on a cause of action arising out of or incident to or connected with the plaintiff's cause of action. The judgment pleaded by appellees had been rendered against them in favor of appellant for the identical stock of goods attached. It appears from the record that appellees filed a cross-action for the purpose of recovering damages for the wrongful attachment in the original suit, but subsequently withdrew this pleading, permitting judgment nil dicit to go against them for the amount claimed, and brought this action as an independent suit to recover their damages. The mere fact that this is an independent suit does not take it out of the statute referred to. It will be noted that our statute relating to counterclaims and set-off gives the defendant the right to plead the counterclaim, and we have not been able to find a case in which the plaintiff has so magnanimously pleaded the set-off of his opponent. It is not necessary to determine whether the plaintiff has such right, but we hold that the plaintiffs had the right to set up the judgment and ask that the same be credited against their claim, and we know of no rule of law prohibiting them from doing so. If the suit had been based upon a promissory note, upon which payments had been made, good pleading would have required plaintiff to show the dates and amounts of the credits to which defendant was justly entitled. We construe this plea to be merely an allegation of certain facts entitling appellant to a credit rather than a plea of counterclaim and set-off. The question presented by this assignment is a novel one, and we have not been able to find an authority directly upon it. The fact that the allegation may have prejudiced appellant by informing the jury that appellants had previously obtained the judgment set up does not appear from the record, and in our opinion would not change the rule. What is here said disposes of the seventh, tenth, eleventh, nineteenth and twenty-sixth assignments of error.

[6] The error of the court complained of under the eighth and ninth assignments, if indeed it could properly be called an error, in overruling the exceptions to that part of the petition wherein it is alleged that the former judgment had been rendered upon a debt not due, was cured by the instructions of the court that such former judgment was res judicata of that issue.

[7] The twelfth assignment, complaining of the charge of the court, is without merit. Under this assignment appellant contends that, if the ground of the attachment, set forth in the affidavit, was true at the time the attachment was levied, then the levy was lawfully made, even though the ground upon which the attachment was based might not have been true at the time the affidavit was made. In 3d Stand. Proc. 349, it is said:

"The attachment statutes in the different jurisdictions prescribe the grounds upon which a creditor may pursue the remedy by attachment in a suit against his debtor, * * * and must stand or fall according to the state of facts existing at the date of its issuance, and cannot be cured by a subsequent event." 4 Cyc. 410; Hobbs v. Greenfield, 103 Ga. 1, 30 S. E. 257; Dennison v. Soper, 33 Iowa, 183; Boyd v. Labranche, 35 La. Ann. 285; Todd v. Shouse, 14 La. Ann. 426; Thompson v. Watson, 1 Man. Unrep. Cas. (La.) 220; Barth v. Graf, 101 Wis. 27, 76 N. W. 1100.

The thirteenth assignment of error is overruled. We have read the two paragraphs of the charge referred to, and do not think the fourth paragraph is subject to the objection of repeating and emphasizing the issue of wrongfully suing out the attachment. While the expression "wrongfully suing out the attachment" occurs in both paragraphs, they are used in different connections, and we think without prejudice to appellant.

[8] The fourteenth, fifteenth, sixteenth, and eighteenth assignments complain of the charge of the court upon the issue of excessive levy, and insist that there is no evidence upon which to base such a charge. The record shows that the officer acted under the personal supervision and direction of one of appellants. The debt amounted to $1,400. Goods to the value of $3,200 were taken under the writ according to plaintiffs' testi-

mony. According to the testimony of one of appellants, the goods remaining after the burglary and after certain perishable groceries had been sold amounted to $2,685. Appellants had agreed to take a mortgage on the fixtures alone to secure its indebtedness. Appellants actually received $1,755 for the property remaining after the burglary and after the sale of fresh meats, vegetables, and other perishable stock. Plaintiff alleged that the defendant, its agents and officers, used the writ in an oppressive and harsh manner; that it could have collected its debt without closing said store, and there was some evidence tending to sustain such allegation. We think the charge was properly given.

[9] The seventeenth assignment complains of the failure of the court to instruct the jury that, if they should find either of the grounds for attachment set out in the affidavit to be true, then the verdict should be for the defendant, upon the question of the wrongful suing out of and the levy of said attachment. No special charge was asked upon this point, and the error, if any, was waived.

[10] It is urged under the twentieth assignment that because R. S. Stubbins, one of the partners and defendants in attachment, did not testify with reference to his intention in making the sale, and the burden being upon plaintiffs in this suit to prove the falsity of the grounds for the attachment, appellees have failed to establish their right to a judgment; and it is further insisted that the preponderance of the testimony was that Stubbins intended that the conversion of the stock into money was for the purpose of placing it beyond the reach of their creditors. The record shows that De Foe told Brady he was going to put on a discount sale for the purpose of getting acquainted with the trade in Amarillo, and it appears that Brady talked to De Foe only. In Brady's presence De Foe promised to close the store at 6 o'clock, and directed Stubbins to do so, and offered to make affidavit that they were not trying to defraud their creditors; that De Foe was the managing partner of the firm; that he negotiated the trade, and that Stubbins had not paid any actual cash into the partnership business; that the money which he expected to invest in the firm arrived the day after the attachment. We think the testimony before the jury was sufficient to sustain appellees' contention. There is sufficient evidence to sustain the verdict of the jury as to the intention of De Foe. Without the consent of De Foe, Stubbins could not have made an unlawful or fraudulent disposition of the firm assets, and, if the attachment was wrongful as to De Foe, the verdict and judgment should be sustained. Weir Plow Co. v. Armentrout-Frazier & Chew, 9 Tex. Civ. App. 117, 29 S. W. 405; 28 S. W. 1045; Rabb v. White, 45 S. W. 850.

[11] The verdict and judgment are not excessive. The verdict is as follows:

"We, the jury, find for plaintiffs in the sum of $930, with interest from February 1, 1910, to date, as actual damages over and above the principal and interest of the judgment."

This is a sufficient finding to warrant the court in decreeing the cancellation of the former judgment.

[12, 13] The twenty-third assignment is without merit. The court did not err in permitting De Foe to detail the particulars of the trade with appellants and to state the agreement between the parties showing how payments had been made, and in what way the balance due for the stock was to have been paid; nor did the court err in permitting De Foe to testify that he used the money taken by him from the cash drawer immediately before the attachment in paying bills owing by appellees at the time the attachment was levied. Appellants had insisted that the act of De Foe, in taking the money from the cash drawer, was evidence tending to show the fraudulent intent, and his evidence was admissible in rebuttal.

Finding no reversible error in the record, the judgment is affirmed.